## McCLAIN v. PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK.

### (Circuit Court of Appeals, Third Circuit. June 10, 1901.)

### No. 33.

1. LIFE INSURANCE—CONSTRUCTION OF CONTRACT—WARRANTIES OR REPRESEN-
TATIONS.

In case of doubt as to whether statements made by an applicant for insurance are to be regarded as warranties, the benefit of the doubt will be given to the insured, and they will be held as representations merely, as to all things not material to the risk.

2. SAME—RULE APPLIED.

An application for life insurance made on printed blanks of the company, and which was made a part consideration for the policy, consisted of two parts; the first containing questions and statements to be answered and subscribed to by the applicant, and the second "statements to the medical examiner" relating to the health and physical condition of the applicant. The first contained the following stipulation: "It is hereby agreed that * * * all the statements contained in part 1 and part 2 of this application, by whomsoever they be written, are warranted to be full, true, and complete, * * * and that if any concealment or fraudulent or untrue statement be made, or at any time any covenant or agreement herein made shall be violated, said assurance shall be null and void." Part 2 closed with the following: "I hereby declare that I have read and understand all the above questions and the answers thereto, and they are hereby made a part of my application, * * * and I hereby warrant said answers as written to be true, and that I am the person described above and in part 1 of this application signed by me." Held, that the latter stipulation must be construed together with the first, which by its terms covered the entire application, and to prevent inconsistency, and in the application of the rule that doubts are to be resolved in favor of the insured, the word "warrant," as used in the latter, must be given the same meaning as in the former, as therein limited, and held to be a warranty only that the statements in part 2 of the application were made in good faith, without concealment or fraudulent intent which would avoid the policy under the first provision; that under such construction such statements were representations, and not warranties, and the policy was not avoided by a misstatement in regard to a matter not material to the risk, if made in good faith without intent to deceive.

3. SAME—ACTIONS ON POLICIES—LAW GOVERNING.

A federal court, in exercising jurisdiction concurrent with the courts of a state in an action on a policy of insurance, is administering the law of the state, and is as much bound by its statute and common law and by its declared public policies as would be the state courts in a like case.[1]

4. SAME—REGULATION—CONSTITUTIONAL POWER OF STATES.

A state may constitutionally, in the exercise of its police powers, declare its public policy in respect to life insurance, and impose conditions on the transaction of business within the state by life insurance companies, domestic and foreign, as it may deem best, and such enactments are binding upon federal courts sitting within the state in cases within their purview.

5. SAME—EFFECT OF MISREPRESENTATIONS—PENNSYLVANIA STATUTE.

P. L. Pa. 1885, p. 134, provides that, "whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith," shall effect a forfeiture or be a ground of defense to a suit on the policy unless it relates to a

[1] What law governs insurance policies, see note to Corley v. Travelers' Protective Ass'n, 46 C. C. A. 287.

matter material to the risk. *Held*, that the decisions of the supreme court of Pennsylvania declaring it to be the law of the state that such statute applied to contracts of life insurance made within the state by a foreign insurance company under authority granted by the state to do business therein, notwithstanding a provision of such contracts that they should be governed by the laws of another state which was the domicile of the company, were binding upon a federal court sitting in the state in an action on such a policy, and established the rule by which the contract must be construed.

6. APPEAL—REVERSAL—AWARDING NEW TRIAL.
Where in the opinion of the trial judge a verdict is not supported by the evidence, he should set it aside and grant a new trial. It is not for the appellate court to impeach the findings of the jury upon questions clearly and distinctly submitted to it, and to order a new trial, when a judgment has been entered upon such findings which that court finds should have been in favor of the other party.

7. LIFE INSURANCE—MISREPRESENTATIONS IN APPLICATION—GOOD FAITH AND MATERIALITY.
In reply to questions in an application for life insurance, the applicant stated that he never had dyspepsia, and "had no medical attendance." He further stated in answer to a general question that he never had any sickness, injury, or infirmity, "except temporary ailments." He was at the time of the application a strong, robust, and active man, but died within a year from cancer of the stomach. In an action on the policy the jury found, in answer to special questions submitted, that he had previously had "dyspepsia or indigestion at times," and that he had been attended by a physician for "temporary indigestion, not material to the risk." They also found that his answers were made in good faith and without any intention to deceive. It appeared from the evidence that the physician referred to was an intimate friend, with whom he rode and talked daily, whom he had consulted three or four times with reference to indigestion, but who had never been called to visit him at his house; and it did not appear that either regarded the ailment as serious, or anything more than temporary, or that it was in fact such as could properly be considered a disease, within the meaning of the contract. *Held*, that the findings of the jury that the answers were made in good faith and were not material to the risk were justified.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

J. H. Brinton, for plaintiff in error.
Francis Rawle, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. Rebecca T. McClain, the plaintiff in error, is the beneficiary named in two policies of insurance taken out by her husband, Isaac E. McClain, on his life, for $5,000 each, bearing date May 1, 1899, and issued by the defendant company on an application signed by the insured, dated April 27, 1899. Decedent died of cancer of the stomach on October 11th following. Due proofs of death were made and submitted to the defendant, who refused to pay the insurance on the ground that certain answers to questions contained in the application were warranted by him to be true, when in fact they were untrue, whereupon an action of assumpsit by the beneficiary and plaintiff in error was brought in the court below against the defendant for an alleged breach of the contract contained in said policies.

The applications for the policies were made and signed by the insured, upon the printed blanks of the company, and consisted of two parts,—the first of printed questions and statements, to be answered and subscribed to by the applicant, other than those relating to his physical condition and habits of life.    Part 2 is headed, "Statements to the Medical Examiner," and consists of questions relating to the health and physical condition of the applicant, and to which categorical answers of yes or no are written.    In part 1 of the said application is contained the following stipulation:

"It is hereby agreed  *  *  *  that all the statements contained in part I. and part II. of this application, by whomsoever they be written, are warranted to be full, true, and complete, and, with the stipulated premiums, shall be the sole consideration of the contract with the society, if any policy or policies be issued, reinstated, or renewed thereon, and that if any concealment or fraudulent or untrue statement be made, or if at any time any covenant or agreement herein made shall be violated, said assurance shall be null and void, and all payments made or accepted on account thereof shall be forfeited by the society, except to the extent as provided in the policy."

Among many printed questions in part 2 of the application is the following:

"(15) Have you now, or have you ever had, any of the following?  Answer yes or no as to each.  If yes in any case, give particulars under 18 below."

Then follows the list of 50 or 60 diseases or disorders, to all of which the answer appended is "No," except as to typhoid fever, which is, "Yes; about 13 years ago."    Among the diseases or complaints to which the answer "No" is appended are, "Cancer or tumor?" and "Dyspepsia?"    At the end of part 2 of the application is the following:

"I hereby declare that I have read and understand all the above questions and the answers thereto, and they are hereby made part of my application for assurance by the Provident Savings Life Assurance Society of New York, and I hereby warrant said answers as written to be true, and that I am the person described above and in part I. of this application signed by me."

Each of the two policies which were issued upon this application contains the following:

"This assurance is granted in consideration of the statements and agreements in the written and printed application for this policy, which is hereby made a part of this contract and of the payment in advance," etc.

There was testimony at the trial before the jury that in 1897 the deceased had paid four visits to a specialist on the diseases of the digestive organs, and was treated by him for catarrh of the stomach; that in January, 1898, he took a trip to Europe, partly for pleasure and partly for his health, he being run down by reason of continued attention to business, according to his wife's statement; that he consulted Dr. Stirk, with whom he was on terms of intimacy,—keeping his horse in his (Dr. Stirk's) stable,—three or four times in February and March, 1898, in regard to indigestion, but it does not appear to have been considered serious, either by himself or the physician; that he was a man stalwart and strong in appearance, taking much exercise, and apparently in robust health.    To the twenty-first question contained in part 2 of the application, which was, "When and by

what physician were you last attended, and for what complaint?" the answer written is, "Had no medical attendance."

Upon the testimony in full, as outlined above, it was contended by the defendant that the insured had made untrue answers as to his having had dyspepsia, and also as to the question last recited, wherein he was asked by what physician he was last attended. It was further contended before the court below that, under the clauses of the contract of assurance above recited, these answers were in the nature of literal warranties, and as such binding upon the insured, irrespective of the bona fides with which they may have been made, and of their materiality to the risk. In this state of the case, the learned judge of the court below, at the conclusion of the testimony, asked the jury to find a special verdict on certain questions of fact submitted to them, with general instructions in regard to the same, reserving the decision of certain questions of law applicable to the facts as found, which might be determinative of the controversy. After stating the uncontroverted facts of the case, such as the proof of the policies and the applications accompanying the same, the death of the insured, and the filing in proper form of the proofs thereof with the defendant company, and that his death was caused by cancer of the stomach and adjacent organs, the following questions were submitted in writing to the jury for their consideration and determination. In so submitting them, the learned judge accompanied the statement of each question with an explanatory charge, in which he fully set forth the nature and requirements of the submission, directed their attention to the testimony bearing on each question, and made plain his opinion that the questions submitted were concerned entirely with matters of fact, as to which the findings of the jury were a necessary basis for the judgment of the court. The questions thus submitted are fully set forth in the special verdict of the jury returning the answers thereto, which is as follows:

"In May, 1899, the deceased took out two policies of insurance in the defendant company, each of $5,000. These policies and the application upon which they are based are made part of the verdict. On the following October 9th the deceased died, and within the proper time proofs of death in the proper form were filed with the defendant company. His death was caused by cancer of the stomach and adjacent organs."

In addition to the above facts, the jury gave the following answers to questions asked by the court:

"(1) On April 27, 1899, when the application was made, was the present and usual health of the deceased sound and good? A. Yes. (2) If not, did he have the disease of cancer or of dyspepsia or both diseases? A. ———. (3) Had he previously had either disease or both diseases? A. Dyspepsia or indigestion at times. (4) If he had either or both at the time of applying, or had previously had either or both, was this fact material to the risk? A. No. (5) When the application was made, did the deceased have a usual medical attendant? If so, who was he? A. No. (6) Had he been attended by a physician before April 27, 1899? If so, who was the last physician, and for what complaint did he attend the deceased? Was it for a temporary ailment not material to the risk, or for a disease or disorder that was material to the risk? A. Yes; attended by Dr. Stirk for temporary indigestion, not material to the risk. (7) In making each answer contained in his application, did the deceased act in good faith towards the company, setting down fully and completely what he honestly believed to be true?

Or did he intentionally conceal from the company any fact material to the risk, or fraudulently make any untrue statement? A. Yes; he acted in good faith, and did nothing to deceive the company.

"The principal of the two policies in suit, with interest to date, amounts to $10,260. If upon the following special verdict the court shall be of opinion that the plaintiff is entitled to recover, we find in her favor in the said sum of $10,260. Otherwise we find in favor of the defendant.

"Henry B. Cox, Jr., Foreman."

The record then proceeds as follows:

"And thereupon counsel for the said plaintiff did then and there, to wit, on the 14th day of April, A. D. 1900, move the said court to enter judgment on said verdict in favor of the said plaintiff and against the said defendant in the sum of ten thousand two hundred and sixty dollars. And thereupon, to wit, on the 16th day of April, A. D. 1900, counsel for the defendant moved the court to enter judgment in favor of the defendant and against the plaintiff, and also at said time filed a rule for a new trial."

Upon the hearing of these motions the court below afterwards directed judgment to be entered in favor of the defendant upon a special verdict. 105 Fed. 834. The reasons for this judgment are set forth in an opinion of the court filed in the case, and sent up to us with the record. They are briefly stated by the learned judge of that court as follows:

"In two respects, as the jury have found, the answers of the insured in his application were untrue. He had had the disease of dyspepsia before April 27th, the day when the application was made, and he had been attended by a physician before the same date, although the application denied that he had ever had dyspepsia, and contained the answer, 'Had no medical attendance,' in reply to the question, 'When and by what physician were you last attended, and for what complaint?'. In my opinion, the insured warranted these answers to be true, and therefore their materiality or the good faith of the insured in making the answers is not to be considered. Accordingly the finding of the jury upon these two points—materiality and good faith—may properly be disregarded."

Was the learned judge correct in this opinion? Were the answers of the insured, as to which the jury made its findings, referred to and discussed by the court below, absolute warranties, or representations and statements merely, as to which good faith and substantial truth, in everything material to the risk, only are required? This is the single question with which we are here concerned, and the one which underlies all the assignments of error. Undoubtedly the parties to a contract of insurance may, by an absolute warranty, make the literal truth of a statement or answer by the insured, whether material to the risk or not, a condition precedent to the liability of the insurer, and they may, by agreement, make material a fact that would otherwise be immaterial. The practical operation of such literal warranties is so often harsh and unfair that courts require their existence to be evidenced clearly and unequivocally, and are not inclined to allow it to rest upon a mere verbal interpretation, where a reasonable construction of the contract as a whole will authorize a different meaning. Public policy sanctions such judicial administration of the law of the contract, and its embodiment, in some instances, in state legislation, has emphasized its importance and soundness. In pursuance of this policy, "all reasonable doubts as to whether statements inserted in or referred to in an insurance policy are warranties or representations should be resolved in favor of the insured." In

the case before us, the application, with its statements and answers, are referred to in the policy, and expressly made part of the entire contract of insurance. In considering, therefore, whether the answers to the two questions made by the insured, and which the jury found were not in accord with the facts, were or were not absolute warranties, we must examine the entire contract, as set forth in the policy and application, taken together. While the word "warranty" is not necessary to a contract of that character, it is also true that the word may be so used as that by its association, and by the intention of the parties, as gathered from the entire contract, it is deprived of its literal and technical meaning. The learned judge of the court below, as also counsel for the appellee, seem to rely upon the declaration with which part 2 of the application closes, which we here again quote:

"I hereby declare that I have read and understand all the above questions and the answers thereto, and they are hereby made a part of my application for assurance by the Provident Savings Life Assurance Society of New York, and I hereby warrant said answers, as written, to be true, and that I am the person described above and in part I. of this application signed by me."

If this were all, we would be compelled to consider the contract as one of warranty, as to the answers referred to, even without respect to their materiality to the risk; but we cannot, in construing the contract as an entirety, ignore the language in part I of the same application, already recited, that "all the statements contained in part I. and part II. of this application, by whomsoever they be written, are warranted to be full, true, and complete, * * * and that if any concealment or fraudulent or untrue statement be made, or if at any time any covenant or agreement herein made shall be violated, said assurance shall be null and void." This declaration expressly covers the one quoted at the conclusion of part 2. By it all the statements contained in part 2 are "warranted to be full, true, and complete." The language almost immediately following must be taken to define the meaning, scope, and extent of these words. Taken thus, the natural and substantial meaning which is "warranted" is that the statements in part 2, as well as in part I, were made in good faith, without any concealment or fraudulent intent on the part of the one who made them. It is in this sense that they are "warranted," and it is with reference to a violation of this sense and meaning alone that it is declared that the assurance shall be null and void. We find ourselves unable to say that a reasonable construction of the contract in this respect requires the dissociation of the last clause of part 2 of the application from the qualifying and explanatory statement in part I, to which we have just referred. The words, "I hereby warrant said answers as written to be true," of the last clause, import a stricter and more absolute obligation than is imposed by the broad and controlling declaration in part I, that all the statements contained in part I and part 2 of the application "are warranted to be full, true, and complete," in the sense that no voluntary concealment or fraudulent or untrue statement has been made. No sufficient reason is suggested why we should make the latter clause of part 2 the controlling

statement·of the whole contract.  If one clause is thus to control .to. the exclusion of the other, the broader and more general language of the declaration in part 1 might well be preferred to this last clause, of part 2 of the application.  If the two clauses are read independently, they are inconsistent.  The court below dealt with the inconsistency by giving to the last clause of part 2 controlling force.  This it did by treating as surplusage, and thus ignoring, the qualifying words of the clause in part 1 to which we have referred.  It is on this vital point that we are compelled to differ from the court below.  The language of the general declaration in part 1 forbids the treating, of the two clauses independently, as it expressly applies its stipulations to "all·the statements contained in part I. and part II. of this application, by whomsoever they be written."  In reading these two clauses of part 1 and part 2, respectively, together, it seems to us that we are conforming to the sense in which the parties to the agreement have written them.  In any event, it seems to us impossible to maintain that the construction of the contract contended for by the defendant is the only reasonable one.˙ If it is not so, then the existence of a literal warranty, as held by the court below, is at least doubtful.  It is well settled that, in case of doubt as to whether statements made by the applicant for insurance are to be regarded as warranties, the benefit of the doubt will be given to the insured, and they will be held as representations merely, as to all things not material to the risk. In the case of Moulor v. Insurance ˙Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447, the application contained a general warranty that the answers to the questions contained therein were fair and true, and it was provided that the application should form part of the contract of insurance.  The policy recited that the agreement of the company to pay the sum specified is "in consideration of the representations made to them in the application," as well as of the payment of the premium at the time specified.  The policy also contained the following:

"It is hereby declared and agreed that if the representations and answers made to this company, on the application for this policy, upon the full faith of which it is issued, shall be found to be untrue in any respect, or that there has been any concealment of facts, then and in every such case the policy shall be null and void."

After stating, in an opinion by Mr. Justice Harlan, that the law does not forbid parties to a contract for life insurance to stipulate that its validity shall depend upon the literal truth of the statements made by the insured, even in matters not material to the risk, the supreme court proceeds to say:

"But, unless clearly demanded by the established rules governing the construction of written agreements, such an interpretation ought to be avoided. In the absence of explicit, unequivocal stipulations, requiring such an interpretation, it should not be inferred" that an express literal warranty was made by the insured to the truth of statements made by him in good faith as to what diseases he may have had in his past life.

In First Nat. Bank of Kansas v. Hartford Fire Ins. Co., 95 U. S. 673, 678, 24·L. Ed. 563, 565, .the court said:

"When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful

whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty."

In Insurance Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644, Mr. Justice Gray, in delivering the opinion of the supreme court, says:

"Answers to questions propounded by the insurers in an application for insurance, unless they are clearly shown by the form of the contract to have been intended by both parties to be warranties to be strictly and literally complied with, are to be construed as representations, as to which substantial truth in everything material to the risk is all that is required of the applicant."

This rule of interpretation is clearly stated by the circuit court of appeals for the Second circuit in Brady v. Association, 9 C. C. A. 252, 60 Fed. 727.

So far, we have been considering only the two provisions in parts 1 and 2, respectively, of the application, because on these, taken by themselves, the court below has found, and counsel for appellee contend here, that an express and literal warranty of the truth of the two answers found by the jury to have been untrue was made by the insured. The learned judge of the court below thinks that the concluding sentence of the application, above quoted and referred to, should be taken as the "final word of the parties on the subject,—the final, explicit declaration of the insured." In this, however, we think he was mistaken. The application preceded the policy, which was executed and issued some three days thereafter. The policy must be taken, if any part of the contract can be so taken, to contain the final, explicit declaration of the parties to the contract. In it we find this stipulation (already recited):

"This assurance is granted in consideration of the statements and agreements in the written and printed application for this policy, which is hereby made a part of this contract."

It is certainly a reasonable construction that the words "statements and agreements" relate to that portion of the application where they are used in regard to the same subject-matter. And it is in the general declaration of part 1, which we have just been considering, that we find what seems to us the obvious and natural subject-matter of the reference, as intended by the language of the policy just quoted. In no other part of the application are found the words "statements and agreements" in such association as would support this reference in the policy. This clause in part 1 of the application, to quote it again, provides "that all the statements contained in part I. and part II. of this application * * * are warranted to be full, true, and complete, * * * and that if any concealment or fraudulent or untrue statement be made, or if at any time any covenant or agreement herein made shall be violated, said assurance shall be null and void." The policy was issued after the application, and states that it was granted in consideration of "the statements and agreements" in the written and printed application. It is difficult to arrive at any other conclusion than that the policy has reference, not to the warranty, but to the fraudulent and untrue statement, or to the violation

of the covenant or agreement, mentioned in this last-quoted clause of the application. The case of Moulor v. Insurance Co., referred to above in another connection, is here, we think, exactly in point. In the course of its opinion the court said:

"We have seen that the application contains a stipulation that it shall form a part of the contract of insurance; also that the policy purports to have been issued upon the faith of the representations and answers in that application. Both instruments, therefore, may be examined to ascertain whether the contract furnishes a uniform, fixed rule of interpretation, and what was the intention of the parties. Taken together, it cannot be said that they have been so framed as to leave no room for construction. The mind does not rest firmly in the conviction that the parties stipulated for the literal truth of every statement made by the insured. There is, to say the least, ground for serious doubt as to whether the company intended to require, and the insured intended to promise, an exact, literal fulfillment of all the declarations embodied in the application. It is true that the word 'warranted' is in the application; and although a contract might be so framed as to impose upon the insured the obligations of a strict warranty, without introducing into it that particular word, yet it is a fact, not without some significance, that that word was not carried forward into the policy, the terms of which control when there is a conflict between its provisions and those of the application. The policy upon its face characterizes the statements of the insured as representations. Thus we have one part of the contract apparently stipulating for a warranty, while another part describes the statements of the assured as representations. The doubt as to the intention of the parties must, according to the settled doctrines of the law of insurance, recognized in all the adjudged cases, be resolved against the party whose language it becomes necessary to interpret. The construction must therefore prevail which protects the insured against the obligations arising from a strict warranty."

In its opinion the court below referred to this case, denying its applicability to, and distinguishing it from, the present case. The learned judge says:

"The policy there expressly declared the answers to be 'representations,' while the application itself only warranted 'that the above are fair and true answers'; adding, 'It is acknowledged and agreed that if there be, in any of the answers herein made, any untrue or evasive statements, or any misrepresentation or concealment of fact,' the policy should be null and void. This was evidently a warranty of fairness and good faith only, and such a warranty is equivalent to a mere representation. In the case in hand, however, the policy refers to the 'statements and agreements,' not to the 'representations,' in the application, and neither 'statement' nor 'agreement' is opposed to 'warranty,' or qualifies it in the least."

We do not think, however, that the case can be thus distinguished. "Representations" and "statements" may here be taken as synonymous. It is true that in the case cited the application warranted "that the above are fair and true answers," but it only differs in this respect from the case at bar in that the warranty is less broad and stringent than the one we are now considering. The qualifying clause with regard to misrepresentations and fraudulent concealment which appears at the conclusion of the warranty in the application in the case cited is almost identical with the wording of the warranty in the case at bar. It is to be observed, also, that the opinion of the court in Moulor v. Insurance Co. shows that it was based upon the assumption that the application contained an absolute warranty, and upon the inconsistency between the application in that respect and the policy issued thereon. It would be hard to conceive of a case,

.more similar, in its ratio decidendi, to the one at bar, than the one we have been considering. We are compelled to the conclusion that the clauses in the application and policy relied upon by defendant for that purpose do not establish an absolute warranty of the truth of the answers made by the insured, and which were found by the jury not to have been in accord with the fact. They were statements or representations only; and according to the verdict of the jury, which must be accepted by us as a final determination of the fact in that regard, they were statements made in good faith, and without intentional concealment or suppression of the truth or fraudulent intent, and were not material to the risk. Though untrue in point of fact,. these statements were not untrue in the sense in which alone, under the stipulations of the contract, they could work a forfeiture of the policy.

As before noted, questions of fact were clearly and distinctly submitted to the jury by the court below, and we are bound (at least, in the aspect of the case just considered) to accept the findings of the jury upon these questions of fact. Among these findings, the two relied upon by the defendant as evidence of the violations of the warranty contained in the contract of insurance, as alleged, are Nos. 3 and 6, as follows:

"(3) Had he previously had either disease or both diseases [cancer or dyspepsia]? A. Dyspepsia or indigestion at times." "(6) Had he been attended by a physician before April 27, 1899? If so, who was the last physician, and for what complaint did he attend the deceased? Was it for a temporary ailment not material to the risk, or for a disease or disorder that was material to the risk? A. Yes; attended by Dr. Stirk for temporary indigestion, not material to the risk."

There is nothing in these findings, of themselves, to induce the belief that the answers given by the insured, and referred to in these findings, were untrue, within the meaning of the qualifying words of the stipulation in part I of the application; that is, that they were intentionally or consciously untrue when made by the insured. But the jury also found, upon a question directed to that point, submitted to them by the court, that the insured, in making these answers, acted in good faith, and did nothing to deceive the company. The finding of the jury in this respect, as also that the temporary indigestion as found by them was not material to the risk, dispenses with any further discussion on our part of this point. We are of opinion, however, apart from the. findings of the jury to this effect, that, having had "dyspepsia or indigestion at times" does not convict the insured of untruth, in the sense of his contract of insurance, when he answered "No" to the interrogations as to diseases in part 2 of his application. Temporary indigestion or dyspepsia at times is too common an ailment, and not serious enough, to suggest itself as a disease, to one answering such a question. The catalogue of diseases, to each of which an interrogation point was appended in the application, was a long one, and embraced diseases of a serious character; so that, under the circumstances, the insured may well have ignored or forgotten the temporary indigestion from which he had at times suffered, when called upon to say whether he had ever had, among other dis-

eases, the disease of dyspepsia. It is not without significance that, after the catalogue of diseases had been gone through with, there is a general interrogatory in the application, as follows:

"(19) Have you ever had any sickness, injury, or infirmity whatever, not already named? If so, state the number of attacks, and the date, location, and duration of each? A. No; except temporary ailments."

It would then appear that the insured distinguished temporary ailments from what might properly be called "diseases." The one trifling and of little consequence to general health; the other serious and menacing to life or health. So also as to his answer to question 21 of the application:

"When and by what physician were you last attended, and for what complaint? A. Had no medical attendance."

The jury found, it is true, that he had been attended by Dr. Stirk for temporary indigestion, not material to the risk. The evidence discloses the fact that Dr. Stirk was an intimate friend, with whom the insured was in the habit of having daily intercourse; that he kept a horse at Dr. Stirk's stable; that they rode and talked together daily. As Dr. Stirk never attended him at his house, his consultations, such as they were, as testified to by Dr. Stirk himself, may well have been considered by the insured as informal and casual, and not within the category of medical attendance, as inquired about in the application. But, as we have already said, the jury having passed, as they did, upon the question of materiality and good faith, we are only concerned with the question, what was the contract in regard to these answers, heretofore discussed; and, being of opinion that a reasonable construction of the same required us to find that the answers, as written by the insured in the application, were "representations," and not "warranties," there was no forfeiture of the policies by reason of the two answers of the insured to the questions we have been considering.

So far, we have not adverted to the question of the applicability of the statute of Pennsylvania to the so-called "clauses of warranty" in the contract of insurance, having confined ourselves to the case as discussed by the court below. The act of June 23, 1885, provides that:

"Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant shall effect a forfeiture or be a ground of defence in any suit brought upon a policy of insurance issued upon the faith of such application unless such misrepresentation or untrue statement relate to some matter material to the risk." P. L. 1885, p. 134.

If this act is applicable to this case, it is clear that its requirements are binding upon us, and will compel a conclusion favorable to the plaintiff upon the facts here disclosed, independently of the reasons hereinbefore stated. The matters of fact upon which the operation of the statute is made to depend, to wit, the good faith of the applicant in his answers, and their materiality to the risk, are the same as those which we have just considered, as determined by the special verdict of the jury. The operation of this statute, and its relation to the questions raised in this case, were not adverted to by the court

below. It does not appear that the matter was discussed, or whether the court considered that the stipulation in the application that "each and every policy issued upon this application shall at all times and places be construed to be a contract made and delivered in the state of New York," was effective to eliminate the consideration of this statute from the case. The testimony shows that the defendant was a New York corporation, doing business within the state of Pennsylvania, having an authorized agent and office in Philadelphia; that the insured resided in Philadelphia when the contract was made; and that the policies were there delivered to him. Under the law of the state of Pennsylvania, the defendant corporation, being foreign, had no right to do any business within that state without first complying with its acts of assembly, which require the corporation not only to designate a person who shall be authorized to receive the service of process for it, but which also require it to file an agreement that process may be served anywhere within the state upon that agent. In extending the judicial power of the United States to controversies between citizens of different states, the only purpose indicated by the constitution was to provide another forum than that of the state, not another law than that of the state. In this case the court below was exercising a jurisdiction concurrent with that of the courts of the state of Pennsylvania. It was administering the law of that state, and was as much bound by its statute and common law, and its declared public policies, as would be the state courts in a like case. The cases, therefore, of Hermany v. Association, 151 Pa. 17, 24 Atl. 1064, and Keatley v. Insurance Co., 187 Pa. 197, 40 Atl. 808, appeal to us strongly, both in reason and authority. By them the statute of Pennsylvania above referred to was declared to be constitutional and in accord with a sound public policy. And it was decided that waiver of the operation of the statute by stipulation of the parties would contravene that public policy of the state, and could not be recognized. Since the argument of the present case the supreme court of the United States has decided the case of Insurance Co. v. Warren, 21 Sup. Ct. 535, 45 L. Ed. 755. This decision and the opinion delivered (April 8, 1901) by Mr. Chief Justice Fuller, though relating to the question whether a state statute was in violation of the constitution of the United States, are interesting and important in the consideration of the question of the bearing of the Pennsylvania statute on the case at bar. The case referred to came up from the supreme court of Ohio. It was a suit upon a policy of life insurance, and was resisted by the insurance company on the ground, among others, that certain answers made by the insured in his application were false, and that he had warranted them to be complete and true, with the further stipulation that if any of the statements were untrue the policy should be void. An Ohio statute (section 3625, Rev. St.) provides that:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued upon such application, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false and was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued."

The supreme court of Ohio affirmed the judgment of the court below (51 N. E. 546) entered upon a verdict for the plaintiff rendered under the instruction of the trial judge that:

"This law, being in force at the time this policy of insurance was taken out, is applicable to the policy of insurance involved in this case, and is applicable to the questions and answers in the application that by the terms of the policy are made express warranties, as well as those that are not."

In delivering the opinion of the supreme court of the United States, Mr. Chief Justice Fuller quoted with apparent approval from an opinion of the supreme court of Ohio the following propositions cited by the latter court from Spelling on Extraordinary Relief:

"Where by statute the legal exercise of a right which at common law was private is made to depend upon compliance with conditions interposed for the security and protection of the public, the necessary inference is that it is no longer private, but has become a matter of public concern; that is, a franchise, the assumption and exercise of which without complying with the conditions prescribed would be a usurpation of a public or sovereign function. * * * There is no class of business, the transaction of which, as a matter of private right, was better recognized at common law than that of making contracts of insurance upon the lives of individuals. But now, by statute, in almost if not quite all the states, stringent requirements as to security of the persons dealing with insurers, and the making and filing reports of public officers for public information, are provided, and must be strictly observed and complied with before any person, association, or corporation may make any contract of life insurance. The effect of such statute is to make that a franchise which previously had been a matter purely of private right."

The chief justice then says:

"In the present case the supreme court of Ohio sustained the constitutionality of section 3625 of the Revised Statutes, which was in force at the time this policy was issued, upon the ground that the state had a right 'to prescribe the terms and conditions upon which it grants such franchise, and the insurance company, having accepted the franchise with its terms and conditions, is bound thereby, and must accept the burdens with the benefits.' The legal effect was held to be the same 'as if the section was copied into and made a part of the policy.' * * * The section in question applies to all life insurance companies doing business in the state of Ohio, and the state can certainly do with foreign corporations what it may do with corporations of its own creation."

After citations from the cases of Insurance Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552, and Waters-Pierce Oil Co. v. Texas, 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657, the chief justice says, at the close of his opinion:

"It was for the legislature of Ohio to define the public policy of that state in respect of life insurance, and to impose such conditions on the transaction of business by life insurance companies within the state as was deemed best."

In the case of Insurance Co. v. Daggs, supra, the supreme court decided that the statute of Missouri which provided that in all suits upon policies of (fire) insurance the defendant should not be permitted to deny that the property insured was worth at the date of the policy the full amount insured therein, and that no condition in any policy of insurance contrary to the provisions of this article shall be legal or valid, was not, when applied to a foreign insurance company, in conflict with the provisions of the fourteenth amendment to the constitution of the United States, forbidding a state to make or en-

force a law which shall abridge the privileges or immunities of citizens of the United States, or to deprive any person of life, liberty, or property without due process of law, or to deny to any person within the jurisdiction the equal protection of the laws.     After sanctioning the proposition that a state may prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, the supreme court proceeds to say:

"That which a state may do with corporations of its own creation, it may do with foreign corporations admitted into the state."

In the case of Keatley v. Insurance Co., supra, the supreme court of Pennsylvania have passed upon the right of the parties, in case of a policy issued by a Connecticut insurance company in Pennsylvania, and to a resident of Pennsylvania, to stipulate that "the policy shall be held as of Connecticut issue, and construed solely by Connecticut laws."     They held that, notwithstanding this stipulation, the contract must be construed according to the laws of Pennsylvania, and as within the provisions of the act of 1885.

The late case of Insurance Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116, is a direct authority upon this point, and, of course, binding on this court.     It decides that the contract for life insurance in that case, made by a New York insurance company in the state of Missouri with a citizen of that state, is subject to the laws of that state regulating life insurance policies, although the policy declares "that the entire contract contained in the said policy and in this application, taken together, shall be construed and interpreted as a whole, and in each of its parts and obligations, according to the laws of the state of New York; the place of the contract being expressly agreed to be the principal office of the said company in the city of New York."     This, then, was clearly a Pennsylvania contract, and subject to the regulations of the Pennsylvania laws.     We think the statute in question was a competent exercise of the police power of the state, and as such binding upon a circuit court of the United States sitting in Pennsylvania, in a case coming within its purview; that it was within the competence of the state to impose the requirements of that statute upon a foreign insurance company, as a condition to its exercise of the privilege accorded to it of doing business within the state, and that the right so accorded is in the nature of a public right or franchise, and a matter of public concern, the conditions prescribed for the enjoyment of which cannot be waived by contract or stipulation of the parties to a policy.     This law, then, as applied to the facts found by the jury, in regard to good faith of the insured in his answers, and the materiality of his statements to the risk, would of itself determine the case in favor of the plaintiff.

A further contention, however, is made,—that the verdict was not in accordance with the weight of the evidence; and the court below has suggested that, in case it should be considered here that its construction of the contract was wrong, the plaintiff should not be allowed to have judgment upon the special verdict, but that the case should be sent back for a new trial, the learned judge adding, "As it seems to me, the weight of evidence is against the verdict, and ought to have led to a different result."     But in that case we think

the court below should have granted a new trial, and that it is not for the reviewing court to impeach the findings of the jury upon questions clearly and distinctly submitted to it by the trial judge, and upon which verdict judgment has been entered by the court below. Waiving this, however, this court has carefully examined the testimony disclosed by the record; and, so far from thinking that the jury was too favorable in their findings to the plaintiff, we are of opinion that as to one, possibly both, of the questions which the jury found had been untruly answered by the plaintiff, a contrary finding might have been made. We have already briefly discussed the want of precision in the question of the application as to "dyspepsia," and the distinction between "indigestion at times" and the dyspepsia which could properly be called a disease; and we will only in this connection call attention to the way in which a similar question and answer, in an insurance case, was treated by the supreme court, in Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 257, 5 Sup. Ct. 119, 28 L. Ed. 708. Suit had been brought upon a policy of life insurance. The application contained this stipulation:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions; * * * and it is agreed * * * that, if there be in any of the answers herein made any untrue or evasive statements, * * * then any policy granted upon this application shall be null and void."

To the question in the application whether the applicant had ever had the disease of "affection of the liver," the answer was, "No." The syllabus of the case in this respect was as follows:

"*Held*, that the answer was a fair and true one, within the meaning of the contract, if the insured had never had an affection of that organ which amounted to disease,—that is, of a character so well defined and marked as to materially disturb or derange for a time its vital functions; that the question did not require him to state every instance of slight or accidental disorders or ailments, affecting the liver, which left no trace of injury to health, and were unattended by substantial injury or inconvenience or prolonged suffering."

The same liberality of view in this regard was exhibited by the supreme court in Insurance Co. v. Wilkinson, 13 Wall. 222, 230, 20 L. Ed. 617, and in Insurance Co. v. Trefz, 104 U. S. 197, 203, 204, 26 L. Ed. 708.

Upon the whole case, therefore, we are of opinion that the judgment of the court below should be reversed, and the case remanded, with directions to enter a judgment upon the verdict in favor of the plaintiff for the amount found due upon the two policies in suit, with interest from the date of such verdict.