DOLL v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

(Circuit Court of Appeals, Third Circuit. June 12, 1905.)

No. 20.

1. INSURANCE—APPLICATION—WARRANTIES.

Where a life insurance policy provided that it was granted in consideration of the written and printed application for the policy, which was made a part of the contract, and that the policy and application, taken together, constituted the entire contract, which could not be varied except in writing by one of specified executive officers of the society, and the application contained a provision over insured's signature that all statements and answers therein were warranted to be true, representations with reference to insured's family history as to consumption, and that insured had not had any serious illness within two years prior to the signing of the application, were warranties. .

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 558–570.]

2. SAME—BREACH.

Where, in an application for life insurance, insured warranted that there was no history of consumption in his family, and that he had had no serious illness within two years prior to the date of the application, evidence that insured's sister had died of consumption prior to the date of the application, of which fact insured had knowledge, and that within two years before the date of the application insured had repeated profuse hemorrhages from the stomach for nearly a week, and was treated by a physician for 30 days, who testified that his illness was serious, established a breach of such warranties.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 688–693.]

3. FOREIGN LAWS—REMEDY—APPLICATION.

A foreign statute of a state where a life insurance contract was made, prohibiting a physician from disclosing any information that he might have acquired in attending any patient in a professional capacity, which information was necessary to enable him to prescribe for such patient as a physician, etc., affected the remedy only, and hence was inapplicable in an action on the policy in a federal court sitting in another state.

4. SAME.

Rev. St. U. S. § 721 [U. S. Comp. St. 1901, p. 581], providing that the laws of the several states, except where otherwise provided, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply, does not apply to an objection to the competency of a physician to testify under a disqualifying statute of a foreign state where the insurance contract sued on was executed.

In Error to the Circuit Court of the United States for the District of New Jersey.

Spencer Weart, for plaintiff in error.

Gilbert Collins, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. The case before us comes up on writ of error to the United States Circuit Court for the District of New Jersey. Suit was brought by the plaintiff below, who is plaintiff in error, against the Equitable Life Assurance Society, defendant in error, in the Supreme Court of the state of New Jersey, upon a

138 F.—45

policy of life insurance, issued by the defendant to William Doll, husband of the plaintiff, for the sum of $5,000. Thereafter, the said suit was removed, at the instance of the defendant, to the Circuit Court of the United States for the District of New Jersey. Application for the policy was made by the plaintiff's husband on October 3, 1902, and he died on the 11th of May, 1903.

The plaintiff's declaration avers generally the performance of all conditions precedent on the part of the insured to be performed. A statute of the state of New Jersey provides that "either party to an action may aver performance of conditions precedent generally; and the opposite party shall not deny such averment generally; but shall specify in his pleading the condition precedent, the performance of which he intends to contest." The defendant pleaded the general issue, with notice of two special defenses, setting forth in detail certain conditions precedent, the performance of which the defendant intended to contest. Counsel for plaintiff in error, in his first assignment, contends that the specification of such conditions precedent, by way of notice of special matter to be given in evidence at the trial accompanying a plea of the general issue, is not such a pleading as is required by this statute. We think, however, this contention is without merit. The plea of the general issue, with notice, as above stated, is technically and in substance a pleading within the meaning of the New Jersey statute. Such a plea of the general issue, with notice of special matter, is authorized by the law of the state as a substitution for a special plea in bar. The special matter, as set out, is part of the pleading. There was no error in holding that the defendant had sufficiently complied with the requirements of the statute referred to.

At the conclusion of the testimony on both sides, upon motion of defendant's counsel, the jury were directed to find a verdict for the defendant, which action of the court below is here assigned for error. The two special matters of defense, of which notice was given with the plea of the general issue, were, (1) that the insured, William Doll, had warranted that there was no history of consumption in his family; i. e. among his parents, brothers or sisters, uncles or aunts, while the truth was that a sister had died of consumption; (2) that the insured, William Doll, had warranted that he had not had any serious illness, which was false, because he had had an attack of hemorrhage of the stomach within two years of the date of his application.

On the first page of the policy, as referred to by the court below in its opinion, is this language: "The privileges and conditions stated in the second and third paragraphs hereof form a part of this contract, as fully as if recited at length over the signatures hereto affixed," and on the third page, in addition to the statement of the money consideration, is the following: "This assurance is granted in consideration of the written and printed application for this policy, which is hereby made a part of this contract;" and at the close of the third page occurs this language: "This policy and the application therefor, taken together, constitute the entire contract, which cannot be varied, except in writing, by one of the fol-

lowing executive officers of the society," (naming them). In the application thus repeatedly and specifically referred to in the body of the policy, and signed by William Doll, the insured, appears this language:

"I hereby agree that this application and the policy taken together, shall constitute the entire contract between the parties hereto; that all statements and answers herein are warranted to be true; that this contract shall not take effect until the first premium has been paid during my good health. I have not been declined or postponed by any life company or received a policy different in form from the one originally applied for, nor have I been intemperate, or had any serious illness or disease, except diseases incident to childhood, and there is no history of consumption or insanity in my family, i. e., among parents, brothers or sisters, uncles or aunts.

"Note—If applicant has ever been declined by any life company or received a policy different from the form originally applied for or been intemperate, or had any serious illness or disease, other than childhood diseases, or if there is any history of consumption or insanity in applicant's family—among parents, brothers, sisters, uncles or aunts, state particulars here."

After the note, there was a small blank space in case of affirmative statements as to the matters mentioned in the note. This blank was not filled in. The father, and brother-in-law of the assured, and two physicians were called by the defendant, and by their undisputed testimony it appears that Rosa Buehler, a sister of the assured and wife of the brother-in-law who testified, had died of consumption in September, 1897; that she had had the disease from one to two years previous to her death; that about three months prior thereto, the disease culminated, and her death was probable; that during her illness, and at the time of her death, she was living in New York City, and that the assured, her brother, who was living with his father in Hoboken, New Jersey, had often visited his sister during her illness.

It is entirely clear that the statements made by the deceased in his application for insurance, were warranties and not mere representations or statements of belief. It is settled law that the party to a contract may make the existence or nonexistence of any fact a condition precedent to the obligation of performance undertaken by either party. And this is true as to the parties to a contract for life insurance. Moulor v. American Life Ins. Co., 111 U. S. 335, 341, 4 Sup. Ct. 466, 28 L. Ed. 447. The language we have quoted from the policy and the application is perfectly clear and unequivocal in this respect. There was an unqualified undertaking on the part of the insured, that the facts alleged by him were as he represented them to be. They were facts about which he could well have exact information. There is nothing in the language used in the whole instrument to indicate that the question between the insurer and insured was one merely of good faith and honest dealing or of belief on the part of the assured in the truth of his statements. In Moulor v. Insurance Company, supra, the court gathered from the language of the policy and application, "that what the company required of the applicant as a condition precedent to any binding contract, was that he would observe the utmost good faith towards it, and make full, direct, and honest answers to all questions, with-

out evasion or fraud, and without suppression, misrepresentation or concealment of facts with which the company ought to be made acquainted; and that by so 'doing, and only by so doing, would he be deemed to have made 'fair and true answers.'" In that case, the insured was asked to answer yes or no, as to whether he had ever been afflicted with any of seventeen different and specifically enumerated diseases. He answered "No," as to all of them. The main defense was, that the insured had been afflicted with asthma and consumption (two of the diseases so enumerated) prior to the making of his application. It may well have been that the assured, at the time of answering these questions, was unconscious of having been afflicted with either asthma or consumption. He must then have been in good health, and was subject to the examination of the physician of the insuring company, and it may well be said that it was "doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract." In such case, the court should properly lean against that construction which imposes upon the insured the obligations of a warranty. In the case at bar, the statement on the part of the insured, that there was no family history of consumption as to his father, mother, brothers or sisters, was a statement most material to the risk about to be assumed by the insurer, and a fact as to which he must have known the truth. By his answer, he averred there was a family history in the respect stated, and that there was no consumption in it. The undisputed fact, however, is that his sister died of consumption, which she had had for two years, and in acute form without hope of recovery for three months before her death; that the assured lived at home with his father, and with him was a visitor at his sister's home. With every disposition to lean against a harsh construction of these warranties and representations in the applications for life insurance, we find no ground upon which this expressed warranty by the assured can be interpreted as a mere representation of his belief, or that the condition precedent made thereby is not of the truth of the statement, but only of the good faith with which it was made.

What has been here said in regard to the first specific defense, is true also as to the second, namely, that the insured had warranted that he had not had any serious illness, and that such warranty was false, because he had an attack of hemorrhage of the stomach within two years of his application, the precise statement being that he had not "had any serious illness or disease, except diseases incident to childhood." The undisputed fact testified to by members of his family, and by the attending physician, was that in the year 1900, he was ill from hemorrhage of the stomach, the doctor testifying that he attended him for 30 days or more, the hemorrhages repeating themselves every day for about a week, and that they were large and profuse, and that the illness was of a very serious nature. There is no room here to find that the statement, that he had had no serious illness except those incident to childhood, was a representation which he might honestly have made, believing it to be true. The very form of the question, as to having had a "serious

illness," was such as to exclude any answer not founded upon positive knowledge. A serious illness, such as was described by his attending physician, could not have escaped the recollection of a man required to make a true statement in regard to his previous health. Courts have been reasonable in this matter, and sought to protect the beneficiaries of life insurance policies from careless or ill-considered statements as to prior health, by not holding nonserious ailments or those not material to the risk, within the warranty of a statement by the insured, but it will not do, by too great refinement of argumentation, to fritter away the protection which these stipulations as to previous illness are properly intended to give to the insurer. They must receive a sensible and reasonable construction. It does not seem to us possible, that a jury, upon any reasonable theory of the testimony disclosed in this record, could find that the insured had not warranted the truth of the statements made by him, but had merely warranted his good faith in making them. The court below were therefore right, in holding upon the undisputed testimony, that the policy on this account was void, and in instructing the jury to find for the defendant.

The decision of this court in McClain v. Prov. Sav. Life Assur. Society, 49 C. C. A. 31, 110 Fed. 80, has been cited and has been carefully reviewed. In that case, the application for insurance was made in two parts. The first contained the following stipulation:

"It is hereby agreed that * * * all the statements contained in part I and part II of this application, by whomsoever they be written, are warranted to be full, true and complete, * * * and that if any concealment or fraudulent or untrue statement be made, or if at any time any covenant or agreement herein made shall be violated, said assurance shall be null and void."

Part 2 closed with the following: "I hereby warrant said answers to be true." It was held that the stipulations must be construed together, the second with the first, which, by its terms, covered the entire application, and to prevent inconsistency in the application of the rule that doubts are to be resolved in favor of the assured, the word "warrant," as used in the latter, must be given the same meaning as in the former, as therein limited, and held to be a warranty, only that the statements in part 2 of the application were made in good faith, without concealment or fraudulent intent, and that under such construction such statements were representations and not warranties, and the policy was not to be avoided by a misstatement in regard to a matter not material to the risk, if made in good faith without intent to deceive. There is no language in the policy or application set out in the record before us, to indicate any intention that the declared warranty was only that the statements made were made in "good faith and without concealment or fraudulent intent," and not that the facts actually were as the insurer represented them to be.

The facts in the case just cited were, that the plaintiff was a strong, robust, active man, who died about a year after his insurance, of cancer of the stomach. In reply to questions in his application for life insurance, the applicant stated that he never had dys-

pepsia, and had had no medical attendance. He further stated, in answer to a general question, that he never had any sickness, injury or infirmity, "except temporary ailments." In an action on the policy, the jury found, in answer to special questions submitted, that he had previously had "dyspepsia or indigestion at times," and that he had been attended by a physician for "temporary indigestion, not material to the risk." They also found that his answers were made in good faith, and without any intention to deceive. It appeared from the evidence that the physician referred to was an intimate friend, with whom he walked nearly every day; that three or four times during these walks, he consulted his friend with reference to indigestion, without asking, or apparently needing, regular attendance. He was never otherwise attended by a physician. We held, and properly held, that the applicant had not stated an untruth, in classing "dyspepsia or indigestion at times" among temporary ailments.

Objection was made at the trial, to allowing a practicing physician and surgeon of New York, who had attended the sister of the deceased in her last illness, to testify as to the cause of her death. The ground of this objection was, that a statute of the state of New York prohibited a physician or surgeon from disclosing "any information which he might have acquired in attending any patient in a professional character and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." Counsel for complainant contends that, inasmuch as the contract of insurance was made in the state of New York, the law and usages of the place of the contract should govern in matters of construction affecting the validity of the contract and the rights of the parties, and that therefore this statute was controlling in the trial of the case at bar. Plaintiff's contention, however, confuses those laws which enter into and form a part of the contract, or with reference to which the contract was made, with those, merely, which govern remedy and procedure. The prohibition of the New York statute is a rule as to evidence or procedure, and does not enter into the contract of insurance. The interpretation of the contract does not at all depend upon it. The rule affects the remedy and not the contract. In such cases, the law of the forum, and not of the place of the contract, must govern. The New York statute, therefore, was not applicable to the trial in the Circuit Court for the District of New Jersey. Section 721 of the Revised Statutes [U. S. Comp. St. 1901, p. 581] has no relevancy to the point here under consideration. The Supreme Court, in Connecticut Mutual Life Ins. Co. v. Union Trust Company, 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708, a case cited by the plaintiff, merely decided that the provision of the New York statute here referred to was obligatory upon the courts of the United States sitting *within that state*. We think the learned judge of the court below committed no error in admitting the testimony objected to.

The judgment below is affirmed.