## CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *v.* UNION TRUST COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued October 20, 1884.—Decided November 17, 1884.

The provision in the New York Civil Code that " a person, duly authorized to practise physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity," is obligatory upon the courts of the United States, sitting within that State, in trials at common law.

Section 721 of the Revised Statutes, declaring that "the laws of the several States, except where the Constitution, treaties, and statutes of the United States otherwise require or provide, shall be regarded as rules of decision, in trials at common law in the courts of the United States, in cases where they apply," relates to the nature and principles of evidence, and also to competency of witnesses, except as the latter subject may be regulated by specific provisions of the statutes of the United States.

To the question, in an application for insurance upon life, whether the applicant had ever had the disease of "affection of the liver," the answer was No : *Held*, that the answer was a fair and true one, within the meaning of the contract, if the insured had never had an affection of that organ which amounted to disease, that is, of a character so well defined and marked as to materially disturb or derange for a time its vital functions ; that the question did not require him to state every instance of slight or accidental disorders or ailments, affecting the liver, which left no trace of injury to health, and were unattended by substantial injury, or inconvenience, or prolonged suffering.

An exception to the modification by the court, in its general charge, of a particular proposition submitted by one of the parties, without stating specifically the modification to which objection is made, is too vague and indefinite.

An action to recover upon a policy of life insurance. The facts which make the several issues are stated in the opinion of the court.

*Mr. D. C. Brown* for plaintiff in error.

*Mr. Wheeler H. Peckham* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was an action upon a policy of life insurance in which a verdict and a judgment were rendered for the plaintiff. The policy was taken out on the 21st of February, 1878, by the Union Trust Company of New York for the benefit of the children of William Orton who might survive him. The insured died on the 22d of April of the same year. In the application, signed by the trust company and by Orton, the following question (the seventh) was propounded: "Have you ever had any of the following diseases? Answer (yes or no) opposite each." Then follows a list of the diseases about which the applicant was asked—apoplexy, paralysis, insanity, epilepsy, habitual headache, fits, consumption, pneumonia, pleurisy, diphtheria, bronchitis, spitting of blood, habitual cough, asthma, scarlet fever, dyspepsia, colic, rupture, fistula, piles, affection of liver, affection of spleen, fever and ague, disease of the heart, palpitation, aneurism, disease of the urinary organs, syphilis, rheumatism, gout, neuralgia, dropsy, scrofula, small-pox, yellow fever, and cancer or any tumor. As to colic, fistula, and fever and ague, the answer was Yes, and as to all the other diseases, No. Being asked, in the same question, to state the number of attacks, character and duration, of all the diseases which he had had, the applicant answered: "Had fistula in 1871, induced by intermittent fever; radically cured."

The eighth question was: "Have you had any other illness, local disease, or personal injury; and if so, of what nature, how long since, and what effect on general health?" The answer was: "Had colic for one day, October, 1877; no recurrence; general health good."

The fourteenth was: "How long since you were attended by a physician; in what diseases? Give name and residence of such physician." The answer was: "October, 1877; for colic; Dr. Hasbrouck, of Dobbs' Ferry; sick one day."

The fifteenth was: "Is there any fact relating to your physical condition, personal or family history, or habits, which has not been stated in the answers to the foregoing questions, and with which the company ought to be made acquainted?" The answer was: "No; nothing to my knowledge."

The sixteenth was: "Have you reviewed the answers to the

above questions, and are you sure they are correct?"  The answer was, Yes.

The application concluded in these words:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions;  . and it is acknowledged and agreed by the undersigned that this application shall form a part of the contract of insurance, and that if there be, in any of the answers herein made, any untrue or evasive statements, or any misrepresentations or concealment of facts, then any policy granted upon this application shall be null and void, and all payments made thereon shall be forfeited to the company."

Upon the back of the application were several indorsements, among them the following:

"Proofs of Death required.—Blanks for the several certificates required to be made in proof of death will be furnished upon request."

The policy purports to have been issued in consideration of the representations and declarations made in the application, and of the payment of the annual premium at the time designated therein.  It purports, also, to have been issued and accepted upon certain express conditions and agreements, among which are: "That the answers, statements, representations, and declarations contained in or indorsed upon the application for this insurance—which application is hereby referred to and made part of this contract—are warranted by the assured to be true in all respects, and that, if this policy has been obtained by or through any fraud, misrepresentation, or concealment, then this policy shall be absolutely null and void."

This action was brought to recover the amount insured—due notice and satisfactory evidence of death having been given. The company resisted recovery upon two grounds:

1. That the answers to the seventh, eighth, fourteenth, and sixteenth questions were false and untrue, and known to be by Orton, in this: that so far from his general health being good at the time of the making and delivery of the application and of the issuing of the policy, he had, for many years immediately prior thereto, suffered with piles, affection of the liver, and hab-

itual headache, and within less than eighteen months prior to the application had been seriously ill for weeks, during which period several physicians attended him; that the illness in October, 1877, continued for some days; that he visited Europe upon one or more occasions for the benefit of his health, and by reason of disease was much enfeebled in body; that at the time of issuing the policy defendant did not know or have reason to believe that said statements, answers, and declarations, or any of them, were untrue, but, believing them to be true, issued the policy; and that by reason of these facts it was null and void.

2. That in the application it was declared that the statements therein were correct and true, and that there was not, to the knowledge of the insured, any fact relating to his physical condition, personal or family history, or habits, not stated in answer to the questions in the application, with which the officers of the defendant ought to be made acquainted; yet, he had been and was subject to and afflicted with the diseases therein specified; had a very serious illness and been attended by several physicians; was ill in October, 1877, much longer than stated; and had visited Europe for his health; which facts were within his knowledge, and were material circumstances in relation to the past and present state of his health, habits of life, and condition, rendering an insurance on his life more than usually hazardous, and with which the officers of the company should have been made acquainted: that these facts were concealed from, and misrepresented to, the company by Orton, whereby it was injuriously influenced, and induced to omit such examinations and precautions in reference to his condition and health as would have prevented the issuing the policy upon the considerations and conditions therein set forth; and that, by reason of such concealment and misrepresentation, the policy was and is absolutely null and void.

1. In support of the defence, physicians, who had attended the insured professionally, were examined as witnesses; and the first assignment of error relates to the refusal of the court to permit them to answer questions, the object of which was to elicit information which would not have been allowed to go to

the jury, under section 834 of the Code of Civil Procedure of
New York, had the action been tried in one of the courts of
the State.    That section provides that " a person, duly author-
ized to practise physic or surgery, shall not be allowed to dis-
close any information which he acquired in·attending a patient,
in a professional capacity, and which was necessary to enable ʳ
him to act in that capacity."    It is not, and could not well be,
seriously questioned, that the evidence excluded by the Circuit
Court was inadmissible under the rule prescribed by that sec-
tion.    *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274;
*Same* v. *Same*, 80 N. Y. 281; *Pierson* v. *People*, 79 N. Y. 424;
*Edington* v. *Ætna Life Ins. Co.*, 77 N. Y. 564; *Edington* v. *Mu-*
*tual Life Ins. Co.*, 67 N. Y. 185.

·  But it is suggested that truth and justice require the admis-
sion of evidence which this statutory rule, rigorously enforced,
would exclude, and that it can be admitted without disturbing
the relations of confidence properly existing between physician
and patient; that it would not afflict the living nor reflect
upon the dead, if the physician should testify that his patient
had died from a fever, or an affection of the liver; and that
the rule, as now understood and applied in the courts of New
York, shuts out, in actions upon life policies, the most satis-
factory evidence of the existence of. disease, and of the cause
of death.    These considerations, not without weight, so far as
the policy of such legislation is concerned, are proper to be
addressed to the legislature of that State.    But they cannot
control the interpretation of the statute, where its words are
so plain and unambiguous as to exclude the consideration of
extrinsic circumstances.    Since it is for that State to determine
the rules of evidence to be observed in the courts of her own
creation, the only question is whether the Circuit Court of the
United States is required, by the statutes governing its pro-
ceedings, to enforce the foregoing provision of the New York
·Code.    This question must be answered in the affirmative.
By § 721 of the Revised Statutes, which is a reproduction of
§ 34 ·of the Judiciary Act of 1789, it is declared that "the
laws of the several States, except where the Constitution,
treaties, or statutes of the United States otherwise require or

provide, shall be regarded as rules of decision, in trials at common law, in the courts. of the United States in cases where they apply." This has been uniformly construed as requiring the courts of the Union, in the trial of all civil cases at common law, not within the exceptions named, to observe, as rules of decision, the rules of evidence prescribed by the laws of the States in which such courts are held. *Potter* v. *National* v. *Bank*, 102 U. S. 165; *Vance* v. *Campbell*, 1 Black, 427; *Wright* v. *Bales*, 2 Black, 535; *McNeil* v. *Holbrook*, 12 Pet. 84; *Sims* v. *Hundley*, 6 How. 1.

There is no ground for the suggestion that §§ 721, 858, and 914 of the Revised Statutes may be construed as relating to the competency of witnesses rather than to the nature and principles of evidence. While in some of the cases the question was whether a witness, competent under the laws of a State, was not, for that reason, under § 34 of the act of 1789, a competent witness in the courts of the United States sitting within the same State, in others the question had reference to the intrinsic nature of the evidence introduced. In *McNeil* v. *Holbrook* the court held the courts of the United States, sitting in Georgia, to be bound by a statute of that State declaring, as a rule of evidence, that in all cases brought by an indorser or assignor on any bill, bond, or note, the assignment or indorsement, without regard to its form, should be sufficient evidence of the transfer thereof; the bond, bill, or note to be admitted as evidence without the necessity of proving the handwriting of the assignor or indorser. And in *Sims* v. *Hundley* a notary's certificate, held to be inadmissible as evidence under the principles of general law, was admitted upon the ground that, having been made competent by a statute of Mississippi, it was competent evidence in the Circuit Court of the United States sitting in that State.

We perceive nothing, in the other sections of the Revised Statutes to which attention is called, that modifies § 721, except that, by § 858, the courts of the United States, whatever may be the local law, must be guided by the rule that "no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or inter-

ested in the issue tried;" and by the further rule, that, "in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against·the other, as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." "In all other respects," the section proceeds, "the laws of the State in which the court is held ·shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty." As to § 914, it is sufficient to say that it does not modify § 721 in so far as the latter makes it the duty of the courts of the United States, in trials at common law, to enforce—except where the laws of the United States otherwise provide—the rules of evidence prescribed by the laws of the State in which they sit.

For these reasons, it is clear that the Circuit Court properly refused to permit physicians called as witnesses to disclose information acquired by them while in professional attendance upon the insured, and which was necessary to enable them to act in that capacity.

2. The widow of the insured having been called as a witness on behalf of the company, it is contended that the court erred in not allowing her to answer this question: "Did you not understand from your husband the nature of the disease?" That question, it is claimed, called for information derived from the insured as to the nature of any disease under which he may have been suffering at a particular time prior to his application. If she was a competent witness, and if the statements of the insured to her were admissible upon the issue whether he had concealed any fact in his personal history or condition with which the company ought to have been made acquainted, or upon the issue whether he had made fair and true answers to the questions put to him, still the question did not call for his statements, but only as to what the witness understood from him as to the nature of his disease. Her statement of what she understood may not have been justified

by what the insured actually said, and may have been nothing more than the unwarranted deduction of her own mind. The objection to the question was properly sustained.

3. This brings us to the consideration of questions more directly involving the merits of the case. The first of these relates to the refusal of the court to instruct the jury that if they "believe, on the evidence, that the insured ever had had affection of the liver before the presentation to the defendant of the application for insurance, the policy is void, and the defendant is entitled to a verdict." This instruction was refused, and the court, among other things, said to the jury, that disease implied a substantial attack of illness, or a malady, which had some bearing on the general health of the insured, not a slight illness, or temporary derangement of the functions of some organ.

The defendant's request for instruction was properly denied, for the reason that it might have been construed as requiring a verdict for the company, upon its appearing simply that the insured, prior to his application, had experienced a slight, temporary affection of the liver, which had no tendency to shorten life, and all the symptoms of which had disappeared, leaving no trace whatever of injury to health. The insured was directed to answer Yes or No, as to whether he had ever had certain diseases, among which was included "affection of liver." It is difficult to define precisely what was meant by "affection of liver," as a disease, and the difficulty is not removed by the evidence of the only physician who testified upon the subject. While he would ordinarily understand affection of the liver to mean some chronic disease of that organ, yet it is not, he says, strictly a medical term, but a general expression, which, by itself, may include acute as well as chronic disease of the liver. He describes it as "a big bag to put many diseases in," and observes that it "would cover anything in the world the matter with the liver." It seems to the court, however, that the company, by its question, sought to know whether the liver had been so affected that its ordinary operations were seriously disturbed or its vital power materially weakened. It was not contemplated that the insured could recall, with such distinct-

ness as to be able to answer categorically, every instance during his past life, or even during his manhood, of accidental disorder or ailment affecting the liver, which lasted only for a brief period, and was unattended by substantial injury, or inconvenience, or prolonged suffering. Unless he had an affection of the liver that amounted to disease, that is, of a character so well-defined and marked as to materially derange for a time the functions of that organ, the answer that he had never had the disease called affection of the liver was a "fair and true" one; for, such an answer involved neither fraud, misrepresentation, evasion, nor concealment, and withheld no information as to his physical condition with which the company ought to have been made acquainted. The charge, upon this point, was in accordance with these views, and no error was committed to the prejudice of the company.

4. There was evidence before the jury tending to show that the insured visited Europe in 1874 under the advice of Dr. Baner, a physician, and that he was ill in 1875 as well as in the month of October, 1876. At the trial the defendant read in evidence, without objection, the proofs of loss received by it from the trust company. The proofs were made on forms supplied by the insurance company. Among them was a certificate from Dr. Baner, who attended the insured in his last illness. That certificate was made up of questions to and answers by the physician. One of the questions required him to state the remote cause of death; if from disease, to give the predisposing cause, the first appearance of its symptoms, its history, and the symptoms present during its progress. His answer was: "The fatal attack was preceded by severe and protracted mental work, and by several attacks of malarial fever, accompanied in each instance by considerable cerebral engorgement." He also stated, in the certificate, that the immediate cause of death was cerebral apoplexy; that he did not think the insured had any other disease, acute or chronic, or had ever had any injury or infirmity; and that there was nothing in his habits, or mode of life, predisposing him to disease, except a tendency to overwork.

Several instructions were submitted by the company touch-

ing this part of the case. In the form asked they were refused. But such refusal would not constitute ground for reversing the judgment, if the propositions they involved, so far as correct, were embraced by the charge. The jury were instructed, upon the whole case, that the insured warranted the truth, in all respects, of each answer, statement, representation and declaration contained in the application, which was a part of the policy; that any inquiry as to their materiality, or his good faith, was removed, by the agreement of the parties, from the consideration of the court or jury; that the truth of each answer was an express condition to the existence of liability on the part of the company; and that if the answers, or any of them, were, in fact, untrue, the contract was at an end, although the insured, in good faith, believed them to be true. Their attention was particularly called to the answer to the eighth question in the application, in which the insured—responding to the inquiry, whether he had had any other illness, local disease, or personal injury—stated nothing more than that "he had colic for one day, October, 1877; no recurrence; general health good." The court said: "Illness is a word which may include, properly, an attack of a less grave and serious character than disease; an illness may be slight or severe; in either case it is an illness." Referring also to a question which required the insured to state any fact relating to his physical condition, personal or family history, or habits, not already disclosed, and with which the company ought to be made acquainted, the court—almost in the language of defendant's eighth request—charged the jury, that if they believed, on the evidence, "that the trip to Europe advised by Dr. Baner, the illness in 1875, or the illness in 1876, or the suffering of several attacks of malarial fever, accompanied by cerebral engorgement (if those attacks occurred, or either of them), were facts relating to the physical condition and personal history of the insured, of importance to the ascertainment of the condition of his health at the time of his application, the omission of those facts, or either of them, from the application, avoids the policy, and the defendant is entitled to recover." After reviewing all the evidence, the court concluded its charge by instructing the jury that if they found

affirmatively that the insured "did not answer one of these questions truly, then there is nothing more for you to do except to find for the defendant; if you find affirmatively that he was guilty of concealment in his answer to the fifteenth question, then you will find for the defendant."

We are of opinion that the charge—the most important parts of which we have quoted—was not one of which the company had any reason to complain; and the plaintiff, having recovered a verdict, makes no objection to it.

In reference to that portion of the charge referring to the statements in the certificate of Dr. Baner, made part of the proofs of loss, the point is made that the court erroneously instructed the jury, that they could not, upon that certificate—made without cross-examination and simply to inform the company of the death of the insured—find as an affirmative fact that the malarial attacks therein referred to as the remote cause of death existed.

Without determining whether this certificate, so far as it assumes to state the causes of the death of the insured, was required by the contract as a condition of the plaintiff's right to sue on the policy, or whether, under the circumstances of this case, it was proof of all the facts stated in it, it is sufficient to say that the objection that the court, in effect, discredited that certificate as *prima facie* evidence of the facts stated, cannot be entertained. No one of the requests for instructions submitted by defendant covers the precise point now made, nor was any exception taken, at the time, to that part of the charge which, it is claimed, refers to the certificate of the attending physician. The only exception taken by the defendant to the charge was "to the charge of the eighth proposition, as modified by the court and embraced in his general charge." The eighth proposition submitted by the defendant was given, in the words already quoted from the charge, with the modification, that the jury were to determine, on the evidence, whether the insured had had the before-mentioned attacks of malarial fever, accompanied by cerebral engorgement. That modification was entirely proper, since it was the province of the jury to determine the weight of the evidence. *Cushman* v. *U. S.*

*Life Insurance Co.,* 70 N. Y. 70, 77. If the subsequent part of the charge, which is now referred to as discrediting Dr. Baner's certificate as evidence of the facts stated in it, was regarded at the trial as a modification of the defendant's eighth proposition, or as objectionable in itself, the exception taken should have been more specific. The attention of the court should have been called to the particular point by something more definite than the general exception taken. *Beckwith* v. *Bean,* 98 U. S. 284; *Lincoln* v. *Claflin,* 7 Wall. 132; *McNitt* v. *Turner,* 16 Wall. 362; *Beaver* v. *Taylor,* 93 U. S. 46.

No error was committed in overruling the instructions asked by the defendant, since whatever they contained, that ought to have been approved, was embodied in the charge to the jury.

We find no error in the record of which this court can take cognizance, and the judgment must be

*Affirmed.*