## HARTFORD LIVE STOCK INS. CO. v. McMILLEN.

(Circuit Court of Appeals, Sixth Circuit. December 11, 1925.)

No. 4412.

**1. Insurance ⊂⇒668(10)—Court should determine whether admitted facts are within clear and unambiguous language of policy.**

Parties have right to contract as to risks insurer will assume, and, if facts are admitted, court should determine whether they come within clear and unambiguous language of policy, having in mind that terms are ordinarily to be construed in their popular sense and according to common understanding.

**2. Insurance ⊂⇒426—Treatment of race horse by veterinary held "operation," within policy relieving insurer of liability; "surgical operation."**

Where legs of race horse were subjected by veterinary surgeon to treatment known as firing, owner *held* not entitled to recover for his death under policy relieving insurer of liability if horse was subjected to "operation of any kind"; "operation," though in its broadest sense including any act or series of acts by which some result is accomplished, being used in its popular meaning of "surgical operation," as act or series of acts performed on patient's body to produce cure.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Operation.]

**3. Insurance ⊂⇒281—Value placed on race horse by applicant held not misrepresentation because exorbitant.**

Value placed on race horse in application for insurance, representing applicant's honest opinion, *held* not misrepresented, within policy, because exorbitant.

**4. Insurance ⊂⇒669(6)—Instruction held sufficiently to cover issue of misrepresentation, fraud, or false swearing.**

Instruction that, if insured falsely represented material matter, or made statement under oath which he knew was untrue, his intention to deceive and defraud was necessarily implied, applying to every issuable question of fraud or false swearing, *held* sufficiently to cover such issues, within policy.

**5. Trial ⊂⇒253(5)—Instruction defining "sickness" and "injury," within policy insuring race horse, held proper.**

Instruction defining "sickness" and "injury," in policy insuring race horse, *held* not improper in excluding slight indispositions or temporary derangements.

**6. Trial ⊂⇒260(1)—Request for special instructions covered by general charge held rightly denied.**

Request for special instructions covered by general charge *held* rightly denied.

In Error to the District Court of the United States for the Eastern Division of

9 F.(2d)—61

the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by John H. McMillen against the Hartford Live Stock Insurance Company on two policies. Judgment for plaintiff, and defendant brings error. Judgment affirmed as to first cause of action, but reversed as to second.

C. G. Myers, of Chicago, Ill., and C. W. Sellers, of Cleveland, Ohio (Myers & Snerly, of Chicago, Ill., and Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for plaintiff in error.

P. J. Mulligan, of Cleveland, Ohio (Bernon, Mulligan, Keeley & Le Fevre and H. E. King, all of Cleveland, Ohio, on the brief), for defendant in error.

Before DONAHUE, MACK, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. John H. McMillen, defendant in error, filed this suit against the plaintiff in error, Hartford Live Stock Insurance Company, asserting two causes of action: The first, on a draft for $23,000 issued in payment of an insurance policy on a race horse named Flintstone, which, when indorsed and presented for payment, was dishonored; the second, on a policy of insurance for $15,000 on a horse, Wheaton, that died while the policy, as alleged, was in full force and effect. Defendant interposed numerous defenses under different provisions of the policies, relying on practically the same grounds as to each cause, but as to the second relied, in addition to the other defenses common to the two, upon a provision relieving it of liability if without its consent the horse was "subjected to an operation of any kind." Issue was joined on these defenses, the case tried, and judgment rendered in favor of plaintiff for the face value of the policies.

Wheaton was a two year old colt and was purchased by McMillen for $12,000 at New Orleans in January, 1924. Shortly thereafter he was insured for $15,000. In April he was shipped to Havre de Grace, Md., and on April 29th was subjected to the treatment known on the race track as firing. This treatment, according to plaintiff's contention, is to be regarded as prophylactic or therapeutic, as distinguished from an operation in a surgical sense. The veterinary surgeon who administered it, testifying as to his reasons for so doing, said: "I went over his knees and fetlock; * * * there were symptoms of exostosis (a bony growth),

what is commonly known as osselet by the general racing community. The knees were in a bulky, loose condition, and I told him by firing I thought that would be rectified, and in my opinion it was the proper thing to do. The condition of the ankles at that time was that they were just at a point where exostosis or osselet would develop, and later on, if the tissues would break, if it was allowed to come through the periosteum, break down, it would cause osselet to form, and, if you fire in the incipient case, you usually avoid it." Exostosis had not developed at the time of the firing, "but the conditions were such that would lead you to believe osselet (exostosis) would develop—it was in an incipient stage." The horse was prepared for the treatment by a reduction in rations and the application of antiseptic bandages to his legs for two or three days. These, according to the witness, were "measures I had taken in preparing Wheaton to insure a successful operation."

After this preparation had been made and the area to be treated anesthetized, a sharp metal instrument, heated to a white heat, was applied to the forelegs, and holes punctured one-eighth of an inch in diameter through the dermis and epidermis, about three-quarters of an inch apart. This was done "on the knees and fetlocks or ankle joints of both front legs," after which an irritant was applied for the purpose of setting up a counter irritation. The legs were, of course, swollen as the result of this operation, and in that condition the horse was shipped to the Maple Heights race track in Ohio. Prior to the shipment lime was placed on his legs, to dry out the raw places. Soon after his arrival at Maple Heights, he was treated by a veterinarian, his legs being bathed in an antiseptic solution. He was also given an injection of anti-tetanic serum. On May 21st he died of septicæmia, which, as the post mortem showed, had fastened itself upon some of his vital organs.

[1] Some of the veterinarians who testified thought the firing of the horse a major operation, while others did not consider it an operation at all, or at most a minor one. The facts as to what was done are beyond dispute, and we think it was for the court to determine whether it was within the inhibition against subjecting the animal to an "operation of any kind." The parties to an insurance policy have the right to contract as to risks the company will or will not assume, and if the facts are admitted it is the province of the court to determine

whether they come within the clear and unambiguous terms of the policy, having in mind, as it is its duty to do, that the terms are ordinarily to be construed in their popular sense and according to common understanding. Insurance Co. v. County of Coos, 151 U. S. 452, 14 S. Ct. 379, 38 L. Ed. 231.

[2] In its broadest meaning "operation" would include the loading of a horse into a car, the unloading of one, or any act or series of acts by which some result is accomplished. But the usual and popular conception is restricted to its surgical sense; i. e., it is popularly understood to refer to a surgical operation, and clearly it was in that sense that it was used by the parties to this suit, in which it is an act or series of acts performed upon the body of a patient to produce a curative or remedial effect. The act performed on Wheaton was not one usually performed by any one but a veterinary surgeon. Certainly it required skill in surgery to puncture the skin in many places and thus properly start a counter irritant that would neutralize or destroy an incipient exostosis. The policy did not prohibit the performance of a major operation without the company's consent or one that involved hazard, but the performance of an "operation of any kind." This clause, as every other in the policy, should, of course, receive a reasonable construction. In the opinion of a majority of the court, such construction includes the operation in question, and as to that part of the claim the trial court should have directed a verdict for the defendant.

Flintstone was acquired by plaintiff in November of 1923, at the price of $8,000. He won in purses thereafter and until May 3, 1924, between $16,000 and $18,000; and on the latter day he started in a race, but before finishing it broke down in the right front leg. The ligaments and tendons of the foot at the pastern joint were torn loose, and the breakdown was so complete that it was necessary to destroy him. Defendant relies upon provisions of the policy relieving it of liability if the animal's death was caused by the carelessness of the assured or his agent, or if there was misrepresentation or false swearing by the plaintiff relative to the horse, either before or after loss.

The contention is that the horse was not in physical condition to make the race on May 3d, that his breakdown was brought about by the carelessness of plaintiff in entering him, and further that plaintiff not only fraudulently concealed the condition of the animal in applying for the policy, but

also made false statements under oath in the proof of loss as to his condition. These questions, as separately presented in the evidence, are elaborately argued by plaintiff. They are but different phases of the inquiry as to whether the horse was unsound or suffering from disease at the time the policy was issued and when he started in the race. We deem it sufficient to say, without discussing the evidence, that the issues pertinent to that subject were submitted to the jury under proper instructions, and there was ample evidence to support its findings.

[3] A sufficient observation as to the alleged exorbitant value placed on the animal by plaintiff is that it was an expression of opinion—so far as this record shows, honestly made—and was not a misrepresentation or false statement. Insurance Co. v. Transfer Co. (C. C. A.) 3 F.(2d) 784, and other authorities cited by defendant on this point, deal with misrepresentations of fact, and not expressions of opinion.

[4-6] It is insisted that the court's charge as to what constituted misrepresentation, fraud, or false swearing, within the terms of the policy, was erroneous, because it required the defendant, not only to prove the fact, but to go further and prove the intent. We do not think the charge, when fully considered, susceptible of that construction; in fact, it was stated to the jury that, if plaintiff falsely represented that which was untrue as to a material matter, or made a statement under oath which he knew was not true when he made it, his intention to deceive and defraud was necessarily to be implied from the act. This applied to every issuable question of fraud or false swearing, and was as far as the court could go under Claflin v. Commonwealth Insurance Co., 110 U. S. 81, 3 S. Ct. 507, 28 L. Ed. 76. Nor was the definition of "sickness" and "injury" in its exclusion of slight indispositions or temporary derangements improper. Connecticut Life Insurance Co. v. Trust Co., 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 708, and Life Insurance Co. v. Francisco, 17 Wall. (84 U. S.) 672, 21 L. Ed. 698.

The special instructions offered were rightly denied, since the points to which they were directed were covered in the general charge. The questions made on the admission and rejection of testimony do not merit discussion, no prejudicial error being committed in that respect.

Judgment affirmed as to the first cause, but reversed as to the second.