## BANKERS' LIFE CO. v. HOLLISTER.

Circuit Court of Appeals, Ninth Circuit.
June 10, 1929.

No. 5733.

Wood, Montague & Matthiessen and Gunther F. Krause, all of Portland, Or., for appellant.

McCamant & Thompson and Ralph H. King, all of Portland, Or., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and LOUDERBACK, District Judge.

RUDKIN, Circuit Judge. This is an appeal from a decree dismissing a complaint for the cancellation of a policy of insurance. February 28, 1920, the Bankers' Life Company issued to Fred Hollister its convertible ten-year term policy, which lapsed for failure to pay the premium due August 28, 1926. December 28, 1926, application was made for the reinstatement of the policy, the application containing the following questions and answers: The insured was asked if he was then in good health, and answered, perfect, never better; he was further asked if he had been ill or injured or employed a physician or surgeon within five years, and answered no. January 11, 1927, the policy was reinstated on this application, and the insured died May 31, 1927. The complaint averred that the answer to the first question was untrue in that the insured was then suffering from angina pectoris, and that the answer to the second question was untrue in that the insured had employed a number of physicians within the five-year period.

The testimony in reference to the first question and answer was substantially as follows: Dr. Russell Keiser, a witness for the appellant, testified that he had been acquainted with the insured as a practicing attorney for some considerable time; that they consulted together frequently on business matters, neither making any charge against the other; that one evening about six years prior to the reinstatement of the policy the insured complained of a pain in his left side, running up into his neck and down his arm; that the witness made a somewhat cursory examination with a stethoscope and informed the insured that it sounded very much like angina pectoris; that he gave the insured two prescriptions, which he carried about with him for some time; that his brother, Dr. Phil Keiser, had also examined the insured and disagreed with the witness as to the diagnosis; that the insured informed the witness some two years prior to his death that he never had any further seizures and that the insured himself at no time believed that he had angina pectoris. Dr. Mingus testified that he examined the insured on the morning of the day on which he died and found no evidence of angina pectoris, and would express no opinion as to the cause of death.

On the question of the employment of physicians, the first witness further testified as follows: "Hollister went on a little spree once in a while. When Hollister drank a little too much liquor, he was not what you would usually consider a drunk man. The effect of the liquor was to wake him up and make him talkative. He would talk for hours. The liquor kept him awake and in fact he made a pest of himself by talking. Witness had been called to attend him while he was in an intoxicated condition. Witness used to give him a hypodermic of morphine, which would put him to sleep and let him sleep the effects of the liquor off, when he would become all right. Witness went to so attend him on two occasions. At other times he was called, but refused to answer the call. At such times he would not go over, but would tell Hollister to get up and do something for himself." Two other physicians testified that they had attended the insured on a few different occasions for the same cause and gave substantially the same treatment, with the same results.

Of the first question and answer, little need be said. The physician upon whose testimony the appellant is compelled to rely

candidly admitted that angina pectoris is a disease not capable of certain and definite diagnosis, except in pronounced cases, and that there is usually great disagreement among physicians. In the present case there was but one seizure, so far as the record discloses, the examination was rather cursory and the patient enjoyed exceptionally good health for the remainder of his life, extending over a period of about six years. Other physicians differed with the one on whom the appellant relies, and in view of all the circumstances the court below was amply justified in finding that the appellant had failed in its proof.

■ Now, as to the second question and answer: The question really embodied three distinct questions: First, was the insured ill; second, was he injured; and, third, had he employed physicians or surgeons within the period of five years: The insured had been neither ill nor injured. To that extent, at least, the answer was true, and might he not well infer that the employment of physicians or surgeons related to the illness or injury concerning which inquiry was made. ■ Furthermore, the application must be liberally construed in favor of the insured, and, under the weight of authority, an applicant for insurance is not required or expected to disclose the fact of employing or consulting physicians or surgeons for slight and temporary ailments which leave no trace of injury to health, such as an ordinary cold or inability to sleep because of occasional excesses, such as existed in this case. 37 C. J. 464.

In Hubbard v. Mutual Reserve Fund Life Ass'n (C. C. A.) 100 F. 719, the court said:

"This rule was applied in Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 258, 5 S. Ct. 119, 28 L. Ed. 708, to the effect that the questions and answers in an application do not ordinarily concern accidental disorders or ailments, lasting only for brief periods, and unattended by any substantial injury or inconvenience, or prolonged suffering. Indeed, they must have relation to the rule de minimis lex non curat, and to a sensible construction, and so they apply, ordinarily, only to matters of a substantial character. Therefore we accept the proposition of the plaintiff in error with reference to the word 'consulted,' found in these questions, that it would not relate to the opinion of a physician concerning a slight and temporary indisposition, speedily forgotten."

In Mutual Reserve Life Ins. Co. v. Dobler (C. C. A.) 137 F. 550, 556, this court said:

"In Moulor v. Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447, it was said that the application for insurance must be understood to relate to matters which have a sensible, appreciable form. In Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 708, it was said that the questions in an application do not require the applicant to tell every incident or accidental or slight disease or ailment which left no trace of injury to health, and were unattended by substantial injury or inconvenience or prolonged suffering; and in Hubbard v. Mutual Reserve Fund Life Ass'n, 40 C. C. A. 665, 100 F. 719, it was held that the word 'consulted,' found in such questions, did not relate to the opinion of a physician concerning a slight and temporary indisposition, speedily forgotten. Of similar import are the decisions of the Supreme Court of Michigan in Plumb v. Penn. Mut. Life Ins. Co. [108 Mich. 94], 65 N. W. 611, and the Supreme Court of Vermont in Billings v. Metropolitan Life Ins. Co. [70 Vt. 477], 41 A. 516, and other decisions too numerous to require further specifications."

Again, in New York Life Ins. Co. v. Moats, 207 F. 481, this court approved an instruction of the like import.

The policy contained the usual provision that it should be incontestable after one year from its date of issue. Whether the year in cases such as this begins to run from the date of the policy or from the date of reinstatement we need not inquire, and upon that question we express no opinion.

The decree of the court below is affirmed.