## NEW YORK LIFE INS. CO. v. GRIFFITH et al.

Circuit Court of Appeals, Tenth Circuit. October 29, 1929.

No. 65.

William C. Michaels, of Kansas City, Mo. (Robert Stone, of Topeka, Kan., Louis H. Cooke, of New York City, Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., and Stone, McClure, Webb & Johnson, of Topeka, Kan., were with him on the brief), for appellant.

Ralph T. O'Neil, of Topeka, Kan. (J. D. M. Hamilton, of Topeka, Kan., was with him on the brief), for appellees.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge. The appellant insurance company filed a bill seeking cancellation of a policy of life and disability insurance issued of date July 15, 1924, to Raymond K. Cave, the assured, and naming his mother, Stella Cave, as beneficiary. Summons was served on both defendants. She filed an answer and cross-bill, purporting to be in behalf of both defendants, in which she resisted cancellation of the policy, and prayed judgment for disability of the assured up to the time of his death on June 27, 1926, and for liability due to his death. On motion, the cross-bill was stricken by the court. The company filed an amended and supplemental bill. Later, the assured and beneficiary having both died, it was stipulated the appellee, Barton E. Griffith, administrator of both estates, be substituted as defendant, and he might plead in his answer his demands for recovery on the policy. A formal action of revivor was entered, and the administrator filed a separate answer and cross-petition for each estate.

The suit was brought within the two years during which by its terms the policy was contestable. The grounds on which the company sought to avoid liability were, first, that in the application for the insurance, which was by its terms made a part of the contract, the insurance was to be effective only if the applicant had not consulted or been treated by any physician since his medical examination, and he had consulted and been treated by Dr. F. E. Wrightman, on July 14, 1924, between the date of that examination and the delivery of the policy, whereby a condition precedent to the validity of the policy had failed; and, second, the assured made the false representations in his application that albumin and sugar had not been found in his urine, that he had not been found to have a high blood pressure, and that he had not consulted a physician or suffered from any ailment or disease of the stomach, or intestines, liver, kidneys, or bladder, whereas, as he knew, he was theretofore afflicted with nephritis, and albumin was found in his urine, and thereby the company, having a right, by the terms of the application, to rely on the representations, was induced to issue the policy, and is entitled to rescind the contract. Both these grounds of suit were explicitly denied in the answer. After a trial to the court, a decree was rendered, dismissing the original and the amended and supplemental bills, and awarding recovery to the defendant, as administrator of Raymond K. Cave, of $640, with interest, and as administrator of Stella Cave, of $3,427.50, with interest, and taxing the costs to the company.

█ The case was tried as an equity suit upon the issues made by bill and answer, and properly before the administrator's demands at law were heard. Liberty Oil Co. v. Condon National Bank, 260 U. S. 236, 43 S. Ct. 118, 67 L. Ed. 232; Horbach v. Coyle (C. C. A.) 2 F.(2d) 702. However, objection to the answer was waived, and there was no dispute that, if the company should fail in its suit, a recovery would follow as of course, in favor of the administrator. Such was the result in the case, and the company appeals.

██ It is well settled that both grounds taken to avoid the policy are valid defenses. The controversy is whether they are sustained in fact by the evidence.

In support of the first ground, the company introduced a prescription of potassium iodide given by Dr. Wrightman, purporting to be for the assured, bearing the doctor's initials, filled July 14, 1924. He could not say whether he saw the assured personally, or the prescription was given to his father. The father, O. M. Cave, testified he was treated by the doctor in the summer of 1924, and the prescription was given for him supposedly for a cold, that the assured both obtained it and was sent to have it filled, that the first time assured consulted Dr. Wrightman was on September 28, or 29, 1924. The assured testified by deposition when ill on June 24, 1926, that he never consulted or was treated by any other than the company's doctor before delivery of the policy.

█ While, on appeal in an equity suit, the evidence is reviewed de novo, the findings of a chancellor are presumptively correct and should be accepted, unless a serious mistake has been made in the consideration of the evidence. Fienup v. Kleiman (C. C. A.) 5 F. (2d) 137; Larson v. Crowther (C. C. A.) 26 F.(2d) 780; Unkle v. Wills (C. C. A.) 281 F. 29. The finding for the administrator was well justified, and in view of its weight in this court, it is approved. There was a failure to sustain the first ground of attack on the policy.

█ The second ground, based on the alleged false representations, is more serious. Concededly the assured and his mother both died of nephritis, the former on June 27, 1926, and the latter on February 11, 1928. Dr. Wrightman testified to treating the assured in September, 1924. Drs. Shafter and Keith testified by deposition to a diagnosis of his

ailment as chronic glomerular nephritis, at the Mayo Clinic, in Rochester, Minnesota, on February 9, 1925. The former recorded his history and the latter the consultation notes of the case, from which it appeared he had some retinal disease and high blood pressure, he stated he had had pneumonia, influenza in 1918, and other ailments, albumin had been found in his urine over two years, and he had been on a low protein diet. These witnesses depended on their record, without a personal recollection of the consultation. Dr. Keith in particular may not have been present when all the questions were asked of the assured, and "he was just one of thousands coming through the clinic."

Dr. Good's affidavit was read as his deposition, relating to assured's admission to the Noyes Hospital at St. Joseph, Mo., when he went there on January 24, 1925, with his mother. He took the history of the case from both, consisting of seven sheets written by him, another doctor and a nurse not called as witnesses. It showed in the main a diagnosis of chronic nephritis, and imputed to the assured a statement that he had Bright's disease and headaches, and first found he had kidney trouble when he applied for insurance two years before, he had reduced vision, etc.

For the defense there was contradictory testimony. The assured in his deposition also stated neither sugar nor albumin had been found in his urine, and he had never consulted a doctor for anything, except the company's doctor and Dr. Heryford, who gave a violet ray treatment for headache, two weeks before he had an examination for his kidneys by Dr. Wrightman, in September 1924. He did not remember any previous examination therefor, nor the influenza attack, nor telling the doctors of examination for his kidneys. He testified to answering the questions as he remembered the facts. After Dr. Wrightman, he consulted Dr. Hibbard for nephritis. He had a high blood pressure examination by Dr. Wrightman in September, 1924, who with Dr. Murdock, conducted the hospital at Sabetha, Kan. He was four or five days at the Noyes Hospital and at Mayo's two days, where he was thoroughly examined, and was told he had nephritis. He refused the order there to go to the hospital and receive a diet list. Drs. Keith and Shafter told him what his trouble was. He was totally disabled. He had consulted Dr. Wrightman for headaches. All advised diet. At the time of testifying, he had headaches, swelling of his feet, bad eyes, the headaches having been first noticed when he saw Dr. Heryford. On July 3, 1924, he saw the races at Kansas City, and

that summer he worked and pitched on a ball team.

Dr. Dillingham, medical examiner for this policy, testified he knew the assured in the summer of 1924, and he appeared to be a robust, well-nourished, and muscled young athlete, and saw him play football that fall and basketball in the winter and baseball in the summer. He identified a photograph of the assured as he appeared in the fall of 1923, in athletic garb. At the medical examination in the summer of 1924, the doctor made an urinalysis and examined him for high blood pressure, and in his opinion he had neither high blood pressure nor any kidney trouble. The examination would have disclosed abnormal albumin in the urine, but it was normal. This witness stated that in an advanced case of nephritis the memory and judgment of the patient is poor. He said the assured's condition as it was in January and February, 1925, could have been reached in a few weeks or months, and the progress is very rapid—from a matter of a few hours to six months. He was sound in June and July. If he had in 1922 the nephritis which caused his death, he would not have been alive in 1924. The eye trouble sometimes, but not always, accompanies that disease. It is typical also in diabetes and other forms. Two of assured's uncles and his mother died of Bright's disease, but there is no predisposition to family history. Kidney trouble may not be shown by analysis, because the showing may be normal in interstitial nephritis.

O. M. Cave, the father of the assured, testified to his death at 22. The assured had the "flu" in 1918. He never went to a physician, as far as witness knew, until the fall of 1924, when he saw Dr. Heryford. He first saw Dr. Wrightman September 28, or 29, 1924. He pitched five games of baseball in the summer of 1924. He became heavier then. Witness never saw anything wrong with him until he went with him to Dr. Wrightman in September, 1924, and he made no complaints. Witness had never heard of the urinalysis, except in the examination for the insurance.

Dr. Heryford testified he saw the assured with his football team in the fall of 1923, and spring and summer of 1924. He gave him two electric treatments for headache in September or October, 1924, without charge. It was not a substantial ailment.

The contention for the company is that the assured had, as he knew, the albuminous condition and a kidney disease when examined for the insurance in July, 1924, and made false representations to obtain the policy on which the company relied. For the

administrator, the contention is the assured then had no knowledge of such condition or disease, did not in fact have it, but it developed later, and his representations were truthful. But for the claimed admissions in the hospital records, the case would be clear for the administrator. As against them, the company's own examiner found no disease or albuminous condition in July, 1924; and he testified, without contradiction, they would develop thereafter at a rapid rate. Cogent testimony that they did is the denial of consultation until the fall of 1924, and the assured's health and activities in the summer of that year.

The apparent conflict between this testimony and the admissions may be reconciled to an extent by the manner his history was taken and written at the hospitals, and the opportunity for mistake, misunderstanding, or a faulty memory by the assured. This is not a case where the alleged misrepresentations related to slight or temporary ailments. Bankers' Life Co. v. Hollister (C. C. A.) 33 F.(2d) 72. Nor is it such a case as Adler v. New York Life Ins. Co. (C. C. A.) 33 F.(2d) 827, where the admissions were established. Here disproof of them is claimed, by testimony they were contrary to the facts.

We are referred to authorities holding that the force of the findings made by the trial judge on appeal does not apply where the testimony is taken by depositions. See Photoplay Pub. Co. v. La Verne Pub. Co. (C. C. A.) 269 F. 730. It is presumed the trial court accorded it full weight. But opposed to it is the testimony of witnesses appearing at the trial. We are by no means convinced there was a serious mistake, or any at all, in estimating the testimony and deciding the issues of fact involved in this branch of the case. The findings of the trial court are therefore sustained.

The result is the decree of the District Court should be and it is accordingly affirmed.