**PRUDENTIAL INS. CO. OF AMERICA v. LOEWENSTEIN.**

No. 3740.

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

Philip H. Hill and Charles Ritchie, both of Charleston, W. Va. (Ritchie, Hill & Thomas, of Charleston, W. Va., on the brief), for appellant.

W. Chapman Revercomb and Robert S. Spilman, both of Charleston, W. Va. (W. Elliott Nefflen, Price, Smith & Spilman, and Koontz, Hurlbutt & Revercomb, all of Charleston, W. Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and HAYES, District Judge.

SOPER, Circuit Judge.

An action at law in the District Court on an insurance policy on the life of Isaac Loewenstein resulted in a verdict in favor of his wife, Edna Herman Loewenstein, the beneficiary, in the sum of $52,500; and the Prudential Insurance Company of America, the insurer, appealed, setting up as its most important assignment of error the refusal of the court to direct a verdict in its favor. The defense was based on certain declarations or answers of the insured to questions contained in the application for the policy, which the company claimed were false and fraudulent representations material to the risk, without which the policy would not have been issued.

The insured declared in his general application for the policy on March 2, 1932, that he was the president and chief executive of the Charleston National Bank of Charleston, W. Va.; that he was carrying five policies of life insurance in divers companies for the aggregate sum of $42,000; that he was born September 5, 1873, and hence was 58 years of age; and that he desired additional insurance in the amount of $50,000. In his declarations to the medical examiner, he stated that he had never had a serious illness; that during the preceding three years he had not been attended for any complaint by any physician; and, specifically, he stated that he had never had habitual cough, palpitation of the heart, shortness of breath, or syphilis. He declared all these statements and answers to be complete and true, and agreed that they should become part of the contract of insurance, and that the policy should be accepted subject to the privileges and provisions therein contained. Upon this application, a policy for $50,000 was issued on March 5, 1932. The insured died on May 25, 1933.

Bearing in mind that the application for this insurance was executed on March 2, 1932, the following medical history of the insured becomes important. Dr. Barkesdale, the family physician, testified on behalf of the defendant, that he first treat-

ed Loewenstein in 1928, and continued to act as his physician on and off until his death, attending him at that time; that he first treated Loewenstein for heart disease in September, 1931, when an X-ray of the chest and an electrocardiogram were made; that the nature of the disease was myocardial, that is, a degeneration or a breaking down of the heart muscle; and that on September 11, 1931, speaking from memory and not from his record as to the date, he reported this condition to Loewenstein, advised a restriction of his activities and diet, and prescribed tablets of metaphylline, a drug affecting the heart muscle; that he treated Loewenstein for the disease twice in September, 1931, once in February, 1932, twice in May, 1932, and on divers subsequent occasions until the patient's death. The electrocardiogram was produced in court and the X-ray photograph and report were said then to be in the possession of the physician.

Dr. Harris, of Philadelphia, testified on behalf of the defendant that he examined the insured in Dr. Reisman's office in Philadelphia on May 4, 1932, two months after the application; that Loewenstein gave a history of having had attacks brought on by exertion and excitement, coming at intervals of about six months until a short time before the examination when they became more frequent, the last attack being three months previous to the examination; that the attacks consisted of a tickle in the throat followed by severe coughing spells, breathlessness, palpitation, pink tinged frothy sputum, blueness of the lips and finger tips, and drenching cold perspiration and rising blood pressure; and that on the occasion of at least two attacks he had been given a sedative injection. The patient produced the electrocardiogram, previously examined by Dr. Barksdale in Charleston. The Philadelphia physicians, on this history and after examination, diagnosed the disease as myocardial degeneration with attacks of pulmonary edema. Loewenstein did not tell the physicians that he had heart trouble when he came for examination, but he was told that he had heart trouble by the physician. Mrs. Loewenstein, the beneficiary, was with him at the time. This testimony of Dr. Harris was not disputed.

On May 6, 1933, nineteen days prior to his death, Loewenstein was examined by Dr. Ireland of Charleston, W. Va., in connection with an application for life insurance in the Equitable Life Assurance Society. Loewenstein told the physician that he had had some medical treatments for a short period beginning in 1929, and extending up to the time of the examination, and described his difficulty as a tickle in the throat and cough and muscular heart trouble, and said that he had been treated by Dr. Barksdale. This examination was made at the instance of insurance agents interested in the placing of an additional $50,000 of insurance on Loewenstein's life. Loewenstein himself thought the examination was futile, frankly telling the doctor of the heart trouble.

Dr. Preston of Charleston, W. Va., testified on behalf of the defendant, that on April 23, 1932, seven and a half weeks after the application for the policy in suit, he examined Loewenstein in anticipation of his making an application for insurance with the North Western Mutual Life Insurance Company, and that Loewenstein, without giving a history of prior maladies, said that about six months previously he had been treated by Dr. Barksdale.

It is obvious from this testimony that at the time of the issuance of the policy the insured was suffering from a disease of the heart, and that the statements which he made in his application for the insurance were incorrect, namely, that he had never had a serious illness; that during the preceding three years he had not been attended for any complaint by any physician; and specifically that he had never had palpitation of the heart or shortness of breath. Nevertheless, the District Judge refused defendant's motion for a directed verdict, and instructed the jury, at plaintiff's request, that Loewenstein's declarations to the medical examiner, even though untrue in fact, did not avoid the policy, unless when made, they were known or should have been known by the insured to be untrue and false, and were material and relied upon by the insurance company in issuing the policy; and the jury was further told that the burden of proving that Loewenstein had been guilty of material misrepresentations and fraud was on the company; that the law never presumes fraud, and that the verdict should be for the plaintiff unless the company showed by a preponderance of the evidence clearly, distinctly, cogently, and convincingly that the declarations of the insured were not only material, but were knowingly and falsely made with intent to deceive. Further, the jury was told in substance that

in determining whether the declaration of the insured that he had not been attended by any physician during the preceding three years was falsely and fraudulently made, they need not consider a consultation about a treatment for any slight or temporary ailments, although, later, they should prove to be serious, and unless Loewenstein knew or had cause to know that he had been treated for a serious disease within a period of three years, the answer or declaration could not be regarded as false or fraudulent.

The beneficiary of the policy, in order to sustain the correctness of this charge, contends that the facts of the case bring it squarely within the rule laid down in Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447, where the defense to an action on a life insurance policy was that the insured had stated in his application that he had not been afflicted with scrofula, asthma, and consumption, whereas he had suffered from all of these diseases. The policy contained the agreement that if the representations and answers should be found to be untrue in any respect, the policy should be void. Nevertheless, the court held that the policy policy to show not only that the insured had made an untrue statement with respect to the existence of disease, but also that he knew or had reason to believe this statement to be untrue.

With this rule in mind, the appellee points out certain evidence as tending to show the absence of knowledge on Loewenstein's part that his answers were false, or at least sufficient doubt on the point as to require its submission to the jury. It is said that the evidence was conflicting as to whether the insured knew he was making false statements when on March 2, 1932, he denied that he had ever had a serious illness. Dr. Barksdale testified from memory, as we have seen, as to when he told Loewenstein of the heart trouble. On the other hand, Mrs. Loewenstein, the beneficiary, testified that she and her husband took a vacation at Atlantic City in September, 1931; that her husband went home first, leaving her at the resort for possibly a week. When she returned, he told her he had an X-ray and an electrocardiogram taken at the hospital, and was waiting to get them, and then Dr. Barksdale would send for him. She went with Loewenstein to Dr. Barksdale's office, and was present throughout the interview, and

that Dr. Barksdale did not then tell her husband that he had a diseased condition of the heart, and they left his office thinking there was not much the matter with the patient. She did not see the electrocardiogram in Dr. Barksdale's office, although Loewenstein had had it made in September, 1931, before she returned from Atlantic City. Loewenstein did not make any change in his activities after leaving Dr. Barksdale's office which indicated a realization of his condition, nor did he change them until after he had consulted Dr. Reisman and Dr. Harris in Philadelphia in May, 1932. It is also suggested that Dr. Barksdale's testimony that he had prescribed a heart stimulant in September, 1931, was contradicted by the testimony of one druggist in Charleston, who said that Loewenstein had a charge account at his store and that there was no record of the purchase of metaphylline for or by Lowenstein prior to June 24, 1932. Again Dr. Preston examined Loewenstein informally for the North Western Mutual Life Insurance Company on April 23, 1932, in anticipation of an application for insurance, at which time Loewenstein said he had consulted Dr. Barksdale about six months previously, but did not say what he had been treated for. The witness telephoned Dr. Barksdale, but the latter did not tell the witness about the heart trouble. The witness in fact found no heart trouble, although admitting that it was possible to exist without his discovering it. However, the witness added that the application was withheld because he did not get a complete report from Loewenstein's physician and hence the history was not complete.

The probative force of this testimony on the question of Loewenstein's knowledge of his condition at the time of the application was small, except for the statement of Mrs. Loewenstein that Dr. Barksdale did not tell him of his condition when they visited the doctor's office together. Even this statement loses much of its weight for the purpose offered, when considered with other undisputed testimony. Dr. Barksdale saw Loewenstein twice in the absence of his wife before March, 1932, first in September, 1931, either before or after she returned from Atlantic City, and, second, in February, 1932. During either visit, the disclosure might have been made.

But even if we assume that Loewenstein did not definitely know that he had serious heart trouble when he applied for

the insurance on March 2, 1932, it still remains that he made an important misstatement of fact in his application, which he must have known to be untrue, when he declared that he had not been attended by a physician for any complaint during the last three years. He had in fact been attended by Dr. Barksdale twice in September and once in February for heart trouble; that is to say, within one month and six months respectively of his statement. Whether or not he was advised of the diagnosis, there can be no doubt but that Dr. Barksdale found the disease. No reason is suggested why the family physician should have testified untruthfully; and moreover, the electrocardiogram admittedly taken in September, 1931, and used both by Dr. Barksdale and Dr. Harris, was produced at the trial in court. It is obvious that if the company had received the truthful answers to which it was entitled, the inquiry of Dr. Barksdale, that would certainly have followed, would have brought out the material fact that the applicant for insurance was suffering from a heart affection of a most serious character.

The appellee meets this point with the technical contention that the company confined itself, by its pleading, to the defense that the insured had falsely and fraudulently said that he had not been attended by a physician for serious heart trouble, thereby raising an issue involving intentional fraud, which was properly submitted to the jury. The West Virginia Code (1931), section 21, article 4, ch. 56, requires the defendant company, in an action on an insurance policy, when it defends on the ground of a violation of a condition of the policy by the insured, to specify in writing the particular condition relied upon. In compliance therewith, the defendant made a statement of particular defense, and also filed a special plea wherein it set out Loewenstein's untrue declaration as to attendance by a physician and asserted that in truth and in fact the applicant had been attended by several physicians within three years for serious heart complaint. We do not think that by this pleading the insurance company waived the substantial defense that the insured had intentionally concealed the medical attendance he had received irrespective of the information given him by the physician. The statement of the defense was not invalidated or restricted by the truthful assertion that the sickness found was serious heart complaint.

On the contrary, the defense was strengthened, for the pleadings showed that the illness was not a trivial one, but one obviously material to the risk.

Nor, as we have seen, was this the only misstatement which the insured knowingly made, for on March 2, 1932, he specifically denied that he had ever had palpitation of the heart or shortness of breath, whereas, it is not disputed that he told Dr. Harris, in giving a history of his ailment on May 4, 1932, that he had had previous attacks at intervals of six months, the last about three months previous to the examination, consisting of coughing spells, breathlessness, palpitation, etc. In view of this undisputed testimony given by a physician and supported by records made at the time, it is futile to contend that the insured did not know he was afflicted with palpitation of the heart or shortness of breath. Since he had such knowledge of his condition as to enable him to describe these symptoms when seeking the advice and assistance of his physicians in May, it is manifest that he could have given the same information to the company's physicians in March. We are not now concerned with questions which call for an opinion of a layman on subjects beyond the range of his information, nor are we concerned with such a situation as existed in Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 S. Ct. 119, 28 L. Ed. 708, where the insured incorrectly answered a question, that he had never had an affliction of the liver, and it was held that unless he had a disease so well defined and marked as to materially derange the functions of that organ, the answer, that he had never had such a disease, was a fair and true one. Here the afflictions were matters of fact, and not of opinion, of a serious nature, and so well understood by the insured that he described them to his own doctor. The following language from Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 S. Ct. 676, 680, 60 L. Ed. 1202, is pertinent here: "Considered in most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud."

See, also, Keeton v. Jefferson Standard Life Ins. Co. (C. C. A.) 5 F.(2d) 183; Fountain & Herrington v. Mutual Life Ins.

 

Co. (C. C. A.) 55 F.(2d) 120; Atlantic Life Ins. Co. v. Hoefer (C. C. A.) 66 F.(2d) 464; Jeffress v. N. Y. Life Ins. Co. (C. C. A.) 74 F.(2d) 874.

■ During the course of the trial in the District Court, the defendant offered testimony of Dr. Hamburger of Chicago who was consulted by Loewenstein on November 25, 1932, about nine months after the application for insurance, and made an examination, but, on the objection of the plaintiff, this testimony was excluded. It was similar in its bearing upon the case to that given by Dr. Harris and Dr. Barksdale. Dr. Hamburger took a careful history from Loewenstein and gave him a complete physical examination, including an X-ray and an electrocardiogram, and a Wasserman test, and came to the conclusion that he was suffering with moderate enlargement of the heart and aorta, with associated atypical attacks of angina pectoris, which in his opinion had existed from two or ten years. Loewenstein told the physician that he had suffered from heart trouble for two years; that about eight years previously he began to have sudden attacks of tickling in the throat, associated with marked coughing and shortness of breath; that these attacks occurred once in every five or six months and lasted fifteen to thirty minutes, and disappeared spontaneously; and that two years previously, opiates were required for his relief after such an attack. The witness used a memorandum in giving the history received from the insured and it was brought out that this history was taken down by an associate physician at a time when the witness was not always present. Later, however, the patient, in response to questions by the witness, corroborated the answers given to the associate. Loewenstein also told the physician that since March, 1931, he had had heart trouble, and had been told by a physician of this condition two years before. The witness also produced the carbon copy of a letter in which he set out his report of the case to Dr. Barksdale. No good reason has been advanced for the exclusion of this testimony, and it should have been admitted, although the usual foundation should have been laid for the introduction of the carbon copy of the letter sent to Dr. Barksdale. There is some difference in the authorities as to admissibility of statements of an insured against his interest, when the policy is payable to a beneficiary, but the better rule is that such statements are admissible,

when, as in the pending case, the right to change the beneficiary has been reserved. Wirthlin v. Mutual Life Ins. Co. (C. C. A.) 56 F.(2d) 137, 86 A. L. R. 138, 145; Self v. New York Life Ins. Co. (C. C. A.) 56 F.(2d) 364.

Reversed.